STATE, RESPONDENT, *v.* SCHULTZ, APPELLANT.

[Argued November 17, 1891.  Decided January 11, 1892.]

MEDICAL EXAMINERS—*Physicians*—*Power to revoke certificate.*—The State board of medical examiners, though empowered to revoke a certificate for unprofessional, dishonorable, or immoral conduct, the statute being silent as to the procedure in such case, are not thereby vested with arbitrary power to revoke the certificate of a physician without reasonable notice of the charge against him and the time and place of the trial thereof.

*Appeal from Second Judicial District, Silver Bow County.*

Indictment for practicing medicine without a certificate from the State board of medical examiners. The defendant was tried before McHATTON J.

*George Haldorn,* and *Toole & Wallace,* for Appellant.

Before appellant could have practiced "contrary to the provisions of the act," having first obtained his certificate, which he then possessed, it must have been lawfully revoked upon due and sufficient notice first given, and an opportunity to appellant to defend his right. The proof for the State concedes that this was not done; therefore the motion for nonsuit should likewise have been granted. The certificate, when regularly issued to appellant, became a judgment of the board, and vested in appellant a right, or at least a privilege, in the highest sense of the term, of which he could not constitutionally be deprived, except by due process of law, and this would require a hearing before revocation, upon ample notice to him given. (3 Am. & Eng. Encycl. of Law, 714, 715; 1 Am. & Eng. Encycl. of Law, 948; *State* v. *McCoy,* 125 Ill. 296, 297.) The court below proceeded upon the theory that if the board had assumed to revoke, whether with or without notice, whether the proceeding of revocation was void or valid, appellant would be guilty if he practices there-

after. This was plainly error, as the Supreme Court of Illinois has decided in a case identical with the one at bar. (*State* v. *McCoy, supra.*)

*Henri J. Haskell,* Attorney-General, *Geo. W. Stapleton,* and *John F. Baldwin,* County Attorney, for the State, Respondent.

BLAKE, C. J. — The indictment alleges that the appellant Schultz, "on or about the fifteenth day of September, A. D. 1890, at the county of Silver Bow, in the State of Montana, wilfully, falsely, and unlawfully did assume upon himself to execute, exercise, and occupy the art, faculty, and science of a physician and surgeon, and then and there unlawfully did practice medicine, and did give, administer, apply, and prescribe medicine to one J. P. Jones (whose full Christian name is to the grand jury unknown), and to divers other persons (whose names are to the said grand jury unknown) afflicted with various infirmities and diseases, he, the said Carl J. Schultz, not having a certificate from the board of medical examiners of the State of Montana, or any member thereof, admitting, allowing, and qualifying him to then and there practice medicine, or any other legal right or authority so to do, contrary to the statute in such case made and provided." The jury returned a verdict of guilty, and judgment was entered thereon.

It appeared during the trial that the board of medical examiners issued October 4, 1889, to said Schultz, a certificate to practice medicine and surgery. The following proceedings were had April 1, 1890, by the board: "In the matter of Dr. Carl J. Schultz, of Butte, it appearing that he has violated his word of honor to abstain from former unprofessional conduct, in that he publicly advertised to cure or treat disease, injury, or deformity in such manner as to deceive the public, his certificate is declared revoked, and the secretary instructed to notify him of this action by the board." The secretary of the board afterwards sent to Schultz this letter: —

"GREAT FALLS, April 9, 1890.

"*Dr. Carl J. Schultz, Butte, Montana*—DEAR SIR: I am instructed by the board of medical examiners of Montana to say that, it appearing from evidence before them that you have

violated your pledge to abstain from unprofessional methods heretofore alleged against you, your certificate authorizing you to practice medicine and surgery in Montana is revoked.

"Very respectfully, your obedient servant,

"ERNEST CRUTCHER, Secretary."

At a regular session of the board, which was held prior to these proceedings, this resolution was adopted: "*Resolved*, that it is the sense of this board that advertising in any newspaper or journal, promising to cure any particular injury or disease of the body of any kind, for any sum of money, or any other consideration, is unprofessional conduct, and shall be sufficient cause for the revocation of any certificate granted." No notice of any charge of unprofessional or dishonorable conduct was ever given to Schultz by any officer of the medical board or otherwise. The court below instructed the jury that this fact was immaterial, and that the action of the board in that matter was valid, and could not be questioned by them. The court also refused to allow the defendant to prove that he had appealed from the decision of the board in revoking his certificate, and that the appeal was then pending in the District Court of the proper county.

The statute relating to this subject provides that the board may "revoke a certificate for unprofessional, dishonorable, or immoral conduct;" and that, in all cases of revocation, "the applicant, if he or she feels aggrieved, may appeal to the District Court of the county where such applicant may have applied for a certificate." It was assumed by the court below that the board possessed the power, under these clauses, of revoking the certificate of appellant without a notice of any charge preferred against him, or a hearing thereon. All the rulings conform to this view of the law, which is clearly erroneous, and subverts the most precious rights of the citizen. The principles which govern the disbarment of attorneys are analogous.

In *Ex parte Heyfron*, 7 How. (Miss.) 127, the court held that it is error to strike an attorney from the roll without giving him notice of the proceedings, and said: "It is a cardinal principle in the administration of justice that no man can be condemned or divested of his rights until he has had the opportunity of being heard." This case was approved in *People* v.

*Turner*, 1 Cal. 150; 52 Am. Dec. 295, and the court, by Mr. Justice Bennett, refers to the "power inherent in every court, which has the authority to admit attorneys to practice, of striking their names from the rolls, or as the order expresses it, of expelling them from the bar, whenever they are guilty of such conduct, either in or out of their profession, as shows them to be unfit persons to practice it." The learned judge then proceeded: "But where an attorney is proceeded against with this object, he is entitled to have notice of the charges against him, and an opportunity to make his defense. This is not only the dictate of natural justice, and the uniform practice in such cases, but it has been carried into an express adjudication in *Ex parte Heyfron*, 7 How. (Miss.) 127. In the case at bar, no notice of the charges upon which the order was made was given; no opportunity for explanation, apology, or defense was afforded; the judgment of the court was *ex parte*, and condemned the defendants without a hearing. It is barely necessary to add that a judgment thus rendered, partaking so strongly of the nature of a criminal proceeding, and so serious in its consequences, cannot be supported. . . . . . An attorney, by his admission as such, acquires rights of which he cannot be deprived, at the discretion of a court, any more than a physician of the practice of his profession, a mechanic of the exercise of his trade, or a merchant of the pursuit of his commercial avocations." (See, also, *Fletcher* v. *Daingerfield*, 20 Cal. 427; *Ex parte Garland*, 4 Wall. 378; *Ex parte Bradley*, 7 Wall. 364; *Ex parte Robinson*, 19 Wall. 512.) In the last case Mr. Justice Field for the court said: "Before a judgment disbarring an attorney is rendered, he should have notice of the grounds of complaint against him, and ample opportunity of explanation and defense. This is a rule of natural justice, and should be equally followed when proceedings are taken to deprive him of his right to practice his profession, as when they are taken to reach his real or personal property. And such has been the general, if not the uniform practice of the courts of this country, and of England. There may be cases undoubtedly of such gross and outrageous conduct in open court on the part of the attorney as to justify very summary proceedings for his suspension or removal from office, but even then he should be heard before he is condemned.

The principle that there must be citation before hearing, and hearing or opportunity of being heard before judgment, is essential to the security of all private rights. Without its observance, no one would be safe from oppression, wherever power may be lodged."

The case of *People* v. *McCoy*, 125 Ill. 289, is on all fours with that at bar, and the court construed a similar statute. We quote from the opinion of Mr. Justice Scott: "Treating the record of the board, in the matter of revoking the certificate that had been issued to defendant, as having the force of a proceeding in its nature judicial on the part of the board in a case where it had jurisdiction of the subject-matter to be investigated, yet the present record is fatally defective, for the reason it is made to appear defendant had no notice of the proceedings proposed to be taken against him. The prosecution put defendant on the stand, and made him their own witness, and he distinctly stated, at their instance, that the notice found in the record was never in fact served upon him. The affidavit of service is not sufficient to overcome his testimony in that respect. It is contrary to the analogies of the law that a proceeding, in its nature judicial, should be obligatory and conclusive upon a person not a party thereto; otherwise a party might be deprived of important rights, with no opportunity to defend against wrongful accusations. Whether the right to practice law or medicine is property, in the technical sense, it is a valuable franchise, and one of which a person ought not to be deprived, without being offered an opportunity, by timely notice, to defend it." The case of *State* v. *State Medical Ex. Board*, 32 Minn. 324; 50 Am. Rep. 575, is to the same effect. The court by Mr. Justice Dickinson said: "It is so opposed to the principles of the common law that any fact affecting the rights of an individual shall be investigated and determined *ex parte*, and without opportunity being afforded to the party to be affected thereby to be heard (4 Blackst. Com. 282, 283; *State* v. *Bryce*, 7 Ohio, pt. 2, p. 82; *Murdock* v. *Phillips' Academy*, 12 Pick. 244), that this act shall not be construed as contemplating such a proceeding, unless that purpose is expressed in the plainest terms. While the act does not prescribe the manner in which the proceedings for the determination of the matters referred to

in section 9 shall be conducted, there is nothing to indicate that it was intended that such investigations and the determination of the fact should be made *ex parte*, or without reasonable opportunity given to the party interested to be heard."

We are satisfied that the legislative assembly did not intend to clothe the medical board of the State with the arbitrary power to revoke the certificate of a physician, without a reasonable notice of the charge against him, and the time and place of the trial thereof. The statute, by its mere silence prescribing the procedure, cannot be so construed. The decision of the board in this matter is not final, and upon an appeal the courts may declare null and void its proceedings. No prosecution of this character can be maintained under these circumstances, and the appellant should have been allowed to prove that he had appealed from the decision of the board in revoking his certificate, and that the appeal was pending in the appropriate tribunal. The court below should have instructed the jury that the certificate which had been issued to the appellant had not been revoked, and was in full force.

It is ordered and adjudged that the judgment be reversed, and that the cause be remanded, with directions to grant the motion for a new trial.

*Reversed.*

HARWOOD, J., and DE WITT, J., concur.