BERNARD COFMAN, Petitioner and Appellant, v. J. J. OUSTER-
HOUS, Dairy Commissioner for the State of North Dakota, and
J. N. Hagan, Commissioner of Agriculture and Labor for the
State of North Dakota, Respondents.

(— A.L.R. —, 168 N. W. 826.)

**Cream stations — operating — license for — Dairy Commissioner — violation
of license — evidence of — may be revoked — statute — constitutionality
of — due process of law.**

1. Chapter 284, Compiled Laws 1913, which requires the owners or operators
of cream stations within the state of North Dakota to take out a license, and
provides that the dairy commissioner may at any time revoke such license on
evidence that the licensee has violated any of the existing dairy statutes of
the state, is constitutional, and does not deprive such licenses of liberty or
property without due process of law.

**Creamery business — affected with public interest.**

2. The creamery business in North Dakota is a business which is affected
with a public interest.

**Licenses — purposes for which given — public good.**

3. Licenses may be imposed not merely for the purpose of acting as tempor-
ary permissions to engage in harmful occupations, but in order to so control
those that are useful that their operation may be harmless and that they
may really subserve the public good.

**Licenses exacted — public regulation — business — public welfare — enforce-
ment of regulations.**

4. Licenses may be exacted for the purpose of regulation, so that a business
which intimately affects the public welfare may be brought within the super-
vision of the authorities, and that the regulations which are made concerning
it may be more easily and certainly enforced.

**Dairy commissioner — independent officer — commissioner of agriculture
and labor — not subordinate to.**

5. The dairy commissioner of the state of North Dakota, whose office is
created by §§ 2835 and 2836, Compiled Laws 1913, is an independent officer,
and, as far as his duties as dairy commissioner are concerned, is not subordi-
nate to the commissioner of agriculture and labor.

NOTE.—The question of the right to revoke a license from the public without a
hearing is discussed in a note in 13 L.R.A. (N.S.) 894.

**Forum — once chosen — party cannot complain of jurisdiction.**

6. Where one chooses his forum in which his rights shall be determined or adjudicated he cannot complain of lack of jurisdiction.

**State — police power of — good order — public health not limited to — extends to fraud — deceit — cheating — unfair competition — prevention of.**

7. The police power of the state is not limited to regulations necessary for the preservation of good order, or the public health or safety. The prevention of fraud and deceit, cheating and imposition and unfair competition, are equally within its province.

**Licenses — regulation of — revocation of — on violation of — Constitution — due process of law — orders of dairy commissioner — appeal from — cannot be had — mandamus — redress from wrongs — resulting from arbitrary or unreasonable action.**

8. The fact that chapter 105 of the Laws of 1917, which provides for the revocation of the licenses of the owners of cream stations by the dairy commissioner on evidence that statutes of the state have been violated, is not unconstitutional, and does not deprive the owners of due process of law for the reason that no appeal from the order of the dairy commissioners is provided for by the statute, it being clear that mandamus will lie to redress any wrong which is suffered through any arbitrary, tyrannical, or unreasonable action on the part of the officer, or which is based on false information.

**Certiorari — writ of — not one of right — discretion of court — granted on — in each case.**

9. The writ of certiorari is not a writ of right, but will be granted or denied in the discretion of the court and according to the circumstances of each particular case as justice may require.

**Writ of certiorari — when used — inferior boards or tribunals — jurisdiction exceeded — no appeal — lack of other speedy or adequate remedy — merits of case — reviewing — cannot be used for.**

10. The writ of certiorari, which is provided for in § 8445 of the Compiled Laws of 1913, can only be used "when inferior courts, officers, boards or tribunals have exceeded their jurisdiction and there is no appeal, nor, in the judgment of the court, any other plain, speedy and adequate remedy." It cannot be used for the purpose of reviewing the merits of a case and of weighing evidence.

**License — seeking and obtaining — benefits derived from — person so acting — cannot question constitutionality of law — when license is revoked.**

11. A person who obtains a license under a law and seeks for a time to enjoy the benefits thereof cannot afterwards and when the license is sought to be revoked, question the constitutionality of the act.

Opinion filed August 12, 1918.

Certiorari to review the action of the District Court in revoking a creamery license.

Appeal from the District Court of Burleigh County, Honorable, *W. L. Nuessle,* Judge.

Judgment for respondents. Petitioner appeals.

Affirmed.

*F. E. McCurdy,* for appellant.

Regulations and licenses under the police power of the state can only be exercised where it has a real substantial relation to the public health, public safety, and public morals, and unnecessary or unreasonable restrictions upon the use of private property should not be imposed. Only an imperative necessity should prompt or warrant the revocation of a license issued for a lawful business. 17 R. C. L. 530; People v. Ringer, 27 L.R.A.(N.S.) 528 and note.

The regulations of the Dairy Commissioner on the modes and manner of handling cream by a licensee must be reasonable, fair, and just, and he cannot arbitrarily revoke a license, without substantial evidence of an intentional and material violation of the license. Tiedeman, Pol. Power, 273, 35 L.R.A.(N.S.) 717.

If the statute is given the construction placed upon it by the respondents, then it is unconstitutional and void in that it permits of the taking of property without due process of law. 6 R. C. L. § 44, p. 49.

*William Langer,* Attorney General, and *Edward B. Cox,* Assistant Attorney General, for respondents.

Where a license is issued to the owner of a cream station by the Dairy Commissioner of the state, he may revoke same at any time, upon substantial evidence being submitted to him, showing a violation of such license, and of the rights and privileges accruing thereunder. Comp. Laws 1913, § 2654.

Where it affirmatively appears that the inferior court, officer, or tribunal of whose acts complaint is made, has not exceeded its jurisdiction, the writ of certiorari will not lie to review the discretionery action of such body, officer, or tribunal. St. M. & Man. R. R. Co. v. Blakemore, 17 N. D. 67; State ex rel. Noggle v. Crawford, 24 N. D. 8, 40 Am. St. Rep. 34.

"A party to an action who has actually appeared may not question the validity of the statute on which the action is brought because of its

failure to provide for a sufficient notice of the proceedings." 12 C. J. 773; Quinn v. State, 82 Miss. 75, 33 So. 839; Tennessee Fertilizer Co. v. McFall, 163 S. W. 806; 19 Ann. Cas. 181; C. B. & Q. R. Co. v. Neb. (U. S.) 42 L. ed. 948; Security Trust & S. V. Co. v. Lexington, 51 L. ed. 204.

Neither is appellant in a position to question the constitutionality of the statute. A person who invoked the benefits of an unconstitutional law, and actually receives them, cannot in subsequent litigation deny its constitutionality. Appellant voluntarily applied for and obtained the license; he accepted and retained the benefits resulting from the possession and use of such license. He cannot now question the validity of the law. M. etc. R. R. Co. v. Nester, 3 N. D. 480, 57 N. W. 510; State v. Seebold, 192 Mo. 720, 91 S. W. 491; 19 Ann. Cas. 183.

The power of the legislature to enact a law for the purpose of state regulation, and requiring that the obtaining of a license shall be a condition precedent to carrying on a certain business, trade, calling, or occupation, is unrestricted except as to limitations found in the state or Federal Constitutions. 6 R. C. L. 217; 17 R. C. L. 501.

To the extent that property or business is devoted to the public use, or is affected with a public interest, it is subject to regulation under the police power. 12 C. J. 922; 17 R. C. L. 541; 6 R. C. L. 202, 210, 217, 220; 51 L.R.A. 151; 17 R. C. L. p. 503, §§ 28, 213; 12 C. J. 922, 924, § 432, and cases cited in note 67 thereunder.

Such a law is not enacted solely for the public good or public health or morals, or for sanitary purposes, but it extends to fair dealing, and is intended to prevent fraud and cheating in connection with the particular calling, business, or occupation for which the license is issued and where public interest is affected. 17 R. C. L. 542; State v. Robinson, 6 L.R.A. 339, 43 N. W. 833; State v. Armour & Co. 27 N. D. 177, 145 N. W. 1033; 6 R. C. L. 207; Runge v. Glerum (N. D.) 164 N. W. 284.

The power to revoke such a license as is here under consideration is conferred upon the Dairy Commissioner of the state, and the law is a valid enactment. Sess. Laws 1917, chap. 105; Christ Church v. Philadelphia County, 16 L. ed. 602; Tomlinson v. Jessup, 24 L. ed. 204; Humphrey v. Pegues, 21 L. ed. 326; Doyle v. Continental Ins. Co. 24 L. ed. 148; Gray v. Connecticut, 41 L. ed. 80.

Such a licensee takes his license subject to such conditions as the legislature deems proper to impose, and one of the conditions is that it may be revoked by the officer named. Such a license is not a contract, and a revocation of it does not deprive the owner of any property, immunity, or privilege. Com. v. Kinsley, 133 Mass. 578; 15 R. C. L. 474; 17 R. C. L. 476, 554, 556; 25 Cyc. 625.

BRUCE, Ch. J. This is an appeal from an order of the district court of the sixth judicial district denying the petition of the appellant for a writ of certiorari to review the action of the dairy commissioner, J. J. Ousterhous, in revoking a license of the appellant to conduct a cream station at Hazen, North Dakota, and to review the action of the commissioner of agriculture and labor, J. N. Hagen, in sustaining the said revocation.

The statutes under which the action sought to be reviewed was taken are as follows:

Section 2835, Compiled Laws 1913: "There is hereby created a bureau of the department of agriculture and labor to be known as the dairy department, which is hereby created for the purpose of promoting, improving and regulating the dairy products of the state and to establish and enforce proper rules and regulations pertaining thereto."

Section 2836, Compiled Laws 1913: "The commissioner of agriculture and labor is hereby authorized and directed to appoint a deputy in his department who shall be known as the dairy commissioner, and shall be the official head of the dairy department."

Chapter 103, Laws 1917:

Sec. 1. "It shall be unlawful for any person to sample or test milk, cream, or any other dairy product excepting merchants dealing in manufactured butter for the purpose of determining the commercial value of such product when bought or sold, without first having secured a license from the state dairy department and such license shall be conspicuously displayed in his place of business. Provided that in case of sickness or necessary absence, said person may appoint a substitute for six days and for a longer period subject to approval of the dairy commissioner, but said person shall be responsible for the acts of said substitute. This license shall be granted to those who shall have completed a course in milk and cream testing in any recognized college or

dairy school, or to those who shall pass an examination under the direction of the state dairy department and satisfactorily demonstrate that they are properly qualified and competent to use such test.

"The dairy commissioner shall have the authority to revoke any license issued under the provisions of this act if the holder is convicted of a failure to comply with the State Dairy Laws. Said license shall be granted for a period of one year by the dairy department upon payment of a fee of two dollars ($2) of which shall be returned in case of failure to pass said examination. In the case of renewal of a license, a fee of one dollar ($1) shall be paid.

"The fees collected under the provisions of this act shall be paid into the state treasury, monthly, by the dairy commissioner to be credited to the dairy department and to be used for conducting said examinations."

Section 2854, Compiled Laws 1913: "It shall be unlawful for the owner, manager, agent or employee of any creamery or cheese factory to manipulate, underread or overread the Babcock test, or any other contrivance used for determining the quality or value of milk."

Chapter 105, Laws of 1917: "Section 284 of the Compiled Laws of 1913 is hereby amended and re-enacted so as to read as follows:

"Every person, firm or corporation owning or operating a creamery, cheese factory, renovating or process butter factory, or cream station in this state, shall be required before beginning business, or within thirty days thereafter, to obtain from the dairy commissioner a license for each and every creamery, cheese factory, renovating or process butter factory or cream station owned or operated by said person, firm or corporation, which shall be good for one year. The fee for such license shall be ten dollars, and no license shall be transferable. Each license shall record the name of the person, firm or corporation owning or operating the creamery, cheese factory, renovating or process butter factory, or cream station license, its place of business, the location thereof, the name of the manager thereof and the number of the same. Each license so issued shall constitute a license to the manager or agent of the place of business named therein.

"It shall be the duty of every person, partnership, firm or corporation, or association holding a license to operate in any plant which dairy products are handled commercially, to post in a conspicuous place such

license under which they are operating, together with a summary of the dairy laws which shall be prepared and sent out from the office of the dairy commissioner.

"The dairy commissioner may withhold a license from any applicant who has previously violated or refused to comply with any of the existing dairy laws or lawful requests issued by said dairy commissioner, or his authorized assistants. The dairy commissioner, may, at any time, revoke a license on evidence that licensee has violated any of the existing dairy statutes, or has refused to comply with all lawful requests of the dairy commissioner or his authorized agents."

The first order canceling the license was in the form of a letter and was as follows:

Bismarck, N. Dak., August 3d, 1918.

Mr. B. Cofman,
    Hazen, North Dakota.
Dear Sir:

Sometime ago one of our deputy inspectors spent several days in your community with the intention of determining the truth of some of the reports that have been coming into this office. After making quite thorough examination from the evidence which our inspector obtained, we find that it becomes the duty of this department to revoke your license. Our inspector weighed, sampled and tested several cans of cream which were delivered to you at your station, and we hold the check which you issued in payment of same, as evidence, that you overread the test on one can of cream as much as 4 per cent and that on another can you credited the producer with 21 lbs less than he had delivered.

You have been long enough in this business to know how to test the cream correctly and no doubt you are also aware that to overread and underread the Babcock test is a violation of our State Dairy Laws.

You will also note that the last legislative session made it the duty of this department to revoke the license of parties who violate our dairy laws and who do not comply with the requirements of this department.

You will kindly give proper attention to this notice and make all the necessary arrangements to have your cream station closed by August 15, 1917. We are sorry that such an action as this has been necessary. We

are also convinced that a firm stand must be taken in enforcing the dairy laws.

Very truly yours,

[Signed] J. J. Ousterhous,<br>
Dairy Commissioner.

Although it is clear from the provisions of §§ 2835 and 2836 of the Compiled Laws of 1913, that no appeal to the commissioner of agriculture and labor is provided for, and the dairy commissioner is an independent officer, the appellant and relator, Bernard Cofman, after the sending of the order in question, made an application to the commissioner of agriculture and labor for a hearing, and in response to this application the dairy commissioner, J. J. Ousterhous, to whom the application must have been referred, telegraphed said Cofman:

"Your license will be extended for a period of ten days for arranging a hearing within that time. Will see your attorney to-morrow."

Thereafter and on the 21st day of August, 1917, with the consent of all parties a hearing was had before the said commissioner of agriculture and labor, John T. Hagan, the relator personally appearing and offering testimony and the dairy commissioner being represented by Assistant Attorney General Edward B. Cox.

After this hearing the following order was issued by the said commissioner of agriculture and labor:

State of North Dakota<br>
Before Commissioner of Agriculture and Labor<br>
In the Matter of the License of Bernard Cofman<br>
To Buy Cream at Hazen, North Dak.

Order Sustaining Revocation of License.

The above-entitled matter coming on to be heard on the 21st day of August, 1917, on petition of Bernard Cofman of Hazen, North Dakota, the petitioner herein being present in person and by his attorney, F. E. McCurdy, and the state dairy commissioner, J. J. Ousterhous, being present in person and represented by Edward B. Cox, Assistant Attorney General. The Commissioner having heard the testimony, the argument of counsel, and being fully advised in the premises.

It is ordered and decreed by the commissioner that the order of the

dairy commissioner revoking the license of Bernard Cofman, petitioner herein, to conduct a creamery station at Hazen, North Dakota, be in all things sustained and upheld.

Dated this 15th day of Sept. 1917.

J. N. Hagen,

Commissioner of Agriculture and Labor.

Although the petition does not allege that this order was recognized and reaffirmed by the dairy commissioner, it seems to proceed on the assumption that this was done, and the certiorari is asked on the grounds that:

"The evidence in this case shows that on the particular cream which the dairy commissioner charges was overread in the test for butter fat, it appears that three tests were made,—one by the Hazen creamery, which test was 39 per cent, one by the public health laboratory at Bismarck, North Dakota, which tested 41 per cent, and the one by the relator at 43 per cent. It further appears from the evidence that the Hazen creamery is in direct business competition with the relator, and that the inspector worked with the Hazen creamery in attempting to catch Mr. Cofman, and that at that time he made no effort to catch the Hazen creamery. That the evidence shows that the cream had been hauled over rough country roads, and that it is possible for a partial churning to have taken place and small particles of the butter fat to have become joined together in small lumps, and that the amount of cream selected for making this test is a very small amount, 18 grams, and that should one of these small particles of butter fat have been found in the 18 grams that the test would be greater and there might be a variation in the test, after being subject to such process. Furthermore, it appears it would be possible for high variation of the reading of the test because of the fact that cream is placed in a tube of a small diameter for test reading, and that due to the capillary attraction the cream has a tendency to be uneven, leaving a depression in the center and that the test would be difficult to read without using what is known to the trade as a red reader.

"Referring to the weight proposition, there appears from the evidence that, instead of there being one can of cream there were two cans of cream in the single test, and the two cans were weighed back and

considered as one can of cream. These cans of cream were weighed at the same old Hazen creamery, and taken to Cofman's cream station and sold to him, and the empty cans taken back to the general merchandise store and weighed. The evidence doesn't show whether the scales were tested or not, and there is no evidence that the Hazen creamery scales had been tested, and it is correct; that since the hearing a test has been made of the scales of the general merchandise store, and it has been found defective. That the plaintiff and the merchant, one named Jake Krause, weighed this particular can on the same scale and also on another scale, and found the scale of the general merchandise store defective. This was done since the hearings, as the matter only developed in evidence at the hearing because no information whatever had been furnished to the plaintiff as to what cans of cream were tested, or any particulars concerning the matter. That the state dairy commissioner having made a ruling as stated in the letter dated August 3d, 1917, and set out in this petition, it appears that this was not a regular cream can from the evidence submitted, and that it had been covered with a cloth tied over the top and when weighed back the cloth was weighed with it, but it appears from the evidence that the cloth was not weighed back with it at the time it was weighed in the store. That a transcript of the evidence taken at the hearing is hereto annexed and referred to and made a part of this application. That no opportunity was given the plaintiff to offer rebuttal testimony on this particular question, and for that reason these statements are incorporated in this petition.

"There is no competent evidence in the record to show that any false reading was made. In other words, there must be a false reading or manipulation of the Babcock test to be a violation of the law. There is absolutely no evidence of any false reading or manipulation. In other words, as far as the evidence shows this may have been an exact record of the test which this man read. It may have been an exact reading of the Babcock test, also it may have been an exact reading of a correctly balanced scale which this man read, and in canceling this license the dairy commissioner presumed and the commissioner of agriculture and labor presumed things not in evidence, and arbitrarily without jurisdiction canceled this man's license.

"Further that the dairy commissioner and the commissioner of agriculture and labor had no jurisdiction to revoke the license of this man,

for the reason that, that portion of the amendment above set out is unconstitutional and void in violation of § 13 of the Constitution of the state of North Dakota, which provision provides that no man shall be deprived of his property without due process of law, and also article 5 of the Amendment of the Constitution of the United States reads to the same effect.

"There being no provision on the Constitution for any hearing or for any trial by any tribunal, and no opportunity for a day in court by which the licensee may protect his rights to pursue a lawful business, if this license is revoked it will have the effect of depriving him of his means of livelihood, absolutely ruining his business, and rendering a considerable investment in property valueless; destroy the good will of the business he has worked up in that community, and inflict upon him irreparable financial loss. That the relator has no other adequate means at law or otherwise, and that the said state dairy commissioner and the commissioner of agriculture and labor had exceeded their jurisdiction in canceling the license."

There is no merit in these contentions. The creamery business is essentially a business which is affected with a public interest, and as such is generally subject to governmental regulation. The police power of the state is not limited to regulations necessary "for the preservation of good order or the public health or safety. The prevention of fraud and deceit, cheating and imposition, is equally within the power, and a state may prescribe all such regulations as in its judgment will secure or tend to secure the people against the consequences of fraud." 6 R. C. L. p. 208; State v. Armour & Co. 27 N. D. 177, L.R.A.1916E, 381, 145 N. W. 1033, Ann. Cas. 1916B, 1149, 240 U. S. 510, 60 L. ed. 771, 36 Sup. Ct. Rep. 440, Ann. Cas. 1916D, 548; State ex rel. Gaulke v. Turner, 37 N. D. 635, 164 N. W. 924; Munn v. Illinois, 94 U. S. 124, 24 L. ed. 83.

The purpose of the statute, indeed, is well known, and is to build and to develop the dairying and stock raising industries of the state. It is to prevent the unfair competition by which the financially stronger foreign creameries and butter and cheese and ice cream factories may destroy those of this state by overgrading or overmeasuring until the local creameries are driven to bankruptcy, and then control the grades and the prices. It is in line with the general laws of the state against unfair

competition. Though the state may not interfere with interstate commerce, it may prevent fraud of this kind.

It is not historically true, as contended by counsel for appellant, that a person has a natural right to engage in any useful and lawful business, free from legislative interference and control, and that such a business cannot be the subject of a legislative license. A business may be useful, yet the method of conducting it may, unless regulated, be conducive of harm, and in the same way there may be inducements to and avenues of fraud in a perfectly legitimate business, or cases in which danger of fraud should be minimized, even though the business may be useful and harmless, and even a useful business may be so affected with a public interest that it may be properly regulated.

Licenses, indeed, may be imposed not merely for the purpose of acting as temporary permissions to engage in harmful occupations, but in order to so control those that are useful that their operation may be harmless, and that they may really subserve the public good, which after all is the basis of all property rights.

It has never been the law that the state may not exact a license for the purpose of regulation, so that a business which intimately affects the public welfare may be brought within the supervision of the authorities, and that the regulations which are made concerning it may be more easily and certainly enforced. Parker & Worthington, Public Health & Safety, § 276; People ex rel. Lodes v. Health Dept. 189 N. Y. 187, 13 L.R.A.(N.S.) 894, 82 N. E. 187; 17 R. C. L. 556.

Nor does the fact that chapter 105 of the Laws of 1917, which authorizes the dairy commissioner to revoke the licenses in question, does not in terms provide for a hearing or for an appeal, render the statute invalid or the action of the dairy commissioner nugatory. Even if a hearing was necessary, and on this we express no opinion, such a hearing was accorded to the petitioner, and even if not before the dairy commissioner, who as we view the statute is an independent officer, and not subordinate in such cases to the secretary of agriculture and labor, yet before the very person (the secretary of agriculture and labor) whom the petitioner designated and before whom he desired it to be had. Even where a hearing is required by the Constitution to be had before an administrative officer, is authorized to cancel licenses, or is looked upon as due process of law, it is not always necessary that it shall be provided

40 N. D.—26.

for by the statute, but is merely a constitutional guaranty to which the authority conferred by the statute is subject.

Nor does the fact that no appeal to the courts is provided for nullify the act, for, without any such provision, it is clear that mandamus will lie in such a case to redress any wrong which is suffered through any arbitrary, tyrannical, or unreasonable action on the part of the officer or which is based upon false information. People ex rel. Lodes v. Health Dept. supra.

We are satisfied, indeed, that the trial court did not err in denying the writ of certiorari in the case which is before us. The writ is not a writ of right, but will be granted or denied in the discretion of the court and according to the circumstances of each particular case as justice may require. 4 Enc. Pl. & Pr. 32. In North Dakota it can only be used "when inferior courts, officers, boards or tribunals have exceeded their jurisdiction and there is no appeal, nor in the judgment of the court any other plain, speedy and adequate remedy." See Comp. Laws 1913, § 8445.

It is clear that we cannot go into the merits of the case and cannot determine whether the relator was in fact guilty of fraud in the conduct of his business, in reading of the weights or in the tests which he applied. These matters are matters of defense at bar, and do not go into the jurisdiction. St. Paul, M. & M. R. Co. v. Blakemore, 17 N. D. 67, 114 N. W. 730; State ex rel. Noggle v. Crawford, 24 N. D. 8, 138 N. W. 2, 40 Am. St. Rep. 34, note.

The remedy, if any, was by mandamus, 17 R. C. L. 557; People ex rel. Lodes v. Health Dept. supra.

Nor in any event can the relator question the right of the dairy commissioner to cancel the license on the ground of the unconstitutionality of the act, and that his business was such that could not be constitutionally licensed. It is clear, indeed, that a person who obtains a license under a law and seeks for a time to enjoy the benefits thereof cannot afterwards question the constitutionality of the act when the license is sought to be revoked. Minneapolis, St. P. & S. Ste. M. R. Co. v. Nester, 3 N. D. 480, 57 N. W. 510; Hart v. Folsom, 70 N. H. 213, 47 Atl. 603; State v. Seebold, 192 Mo. 720, 91 S. W. 491, Note in 19 Ann. Cas. 183.

Nor, indeed, do we believe that there is any merit in the contention

that the license, when once issued, can only be revoked after a conviction in a criminal prosecution. It is true that chapter 103 of the Laws of 1917, in conferring the authority to revoke licenses issued to persons who are authorized *to sample or test milk,* uses the term "convicted."

It is also true that, although the word "convicted" has not always and in the case of licenses been held to imply a conviction before a court of law (see 1 Words & Phrases, 2d Series, 1045; Sawicki v. Keron, 79 N. J. L. 382, 75 Atl. 478), it seems to be generally so construed by the law dictionaries. The revocation in the case at bar, however, is not sought to be had under the provisions of chapter 103, but under those of chapter 105 of the Laws of 1917, which relate not to those who sample or test milk, but to "every person, firm, or corporation, owning or operating a creamery, cheese factory, . . . butter factory, or cream station in this state," and which act was approved on the day after the approval of chapter 103, and contains the clause: "The dairy commissioner may withhold a license from any applicant who has previously violated, or refused to comply with any of the existing dairy laws or lawful requests issued by said dairy commissioner, or his authorized assistant. The dairy commissioner, may, at any time, revoke a license *on evidence* that licensee has violated any of the existing dairy statutes, or has refused to comply with all lawful requests of the dairy commissioner or his authorized agents."

The judgment of the District Court is affirmed.

CHRISTIANSON, J. (dissenting). I am unable to agree with the reasoning or the conclusion reached by my associates in this case. And in view of the importance of the questions involved, I deem it my duty to indicate the reasons for my dissent. It should be noted at the outset that the object of the license statute involved in this action is regulation, and not revenue. The power to tax is exercised to raise revenue; the police power is exercised to promote the order, safety, health, morals, and general welfare of society. While the police power is not susceptible of exact definition or limitation, the real object of such power, "and that indeed which in its broad sense includes every instance of its exercise, is the securing of the general welfare, comfort, and convenience of the people" (12 C. J. 920) ; and to that end it may be exercised

to meet the changing conditions of society, and "put forth in aid of what is sanctioned by usage or held by prevailing morality or strong preponderant opinion to be greatly and immediately necessary to the public welfare." 9 Enc. U. S. Sup. Ct. Rep. 523; Noble State Bank v. Haskell, 219 U. S. 104, 55 L. ed. 112, 32 L.R.A.(N.S.) 1062, 31 Sup. Ct. Rep. 186, Ann. Cas. 1912A, 487. · Where a subject is within the police power it is for the legislature, within constitutional limits, to determine what the remedy shall be. The police power, however, is not above the Constitution, but "is always subject to the rule that the legislature may not exercise any power that is expressly or impliedly forbidden to it by the state Constitution." 12 C. J. 929. The object of a police measure must be the public good. And the business sought to be regulated must, in some measure, be affected with public interest. For "no general power resides in the legislature to regulate private business, or prescribe the conditions under which it shall be conducted so long as the business is not affected with public interest. The merchant, manufacturer, artisan and laborer under our system of government are left to pursue and provide for their own interest in their own way, untrammeled by burdensome and restrictive regulations, which however common in rude and irregular times are inconsistent with constitutional liberty." 9 Enc. U. S. Sup. Ct. Rep. 521, 522. And "the legislature may not, under guise of protecting the public interest, deny to any person the equal protection of laws, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations." 9 Enc. U. S. Sup. Ct. Rep. 523. See also 6 R. C. L. pp. 226–228. But "to justify the state in interposing its authority in behalf of the public, it must appear that the interests of the public generally, as distinguished from those of a particular class, require such interference." 9 Enc. U. S. Sup. Ct. Rep. 523.

While the legislature, in the exercise of the police power, may regulate all professions, trades, occupations, and business enterprises that are of a quasi public ·nature by providing such rules or restrictions as to safeguard the general welfare of the public, such legislative power has its limits, and "is subject to the qualification that the measures adopted for the purpose of regulating the exercise of the rights of liberty and the use and enjoyment of property must be designed to effect some public object which government may legally

accomplish, that they must be reasonable and have some direct, real, and substantial relation to the public object sought to be accomplished, and that the governmental power is not to be arbitrarily or colorably exercised or used as a subterfuge, for oppressing some individual or class of individuals. In short, the exercise of the police power is subject to judicial review, and personal and property rights cannot be wrongfully destroyed by arbitrary enactment. If the means employed have no real or substantial relation to the public objects which government may legally accomplish; if they are arbitrary and unreasonable, beyond the necessities of the case,—the judiciary will disregard mere forms and interfere for the protection of rights injuriously affected by such illegal action." 5 Enc. U. S. Sup. Ct. Rep. 556, 557.

"The police power of the state extends only to such measures as are reasonable, and the general rule is that all police regulations must be reasonable under all circumstances. In every case it must appear that the means adopted are reasonably necessary and appropriate for the accomplishment of a legitimate object falling within the domain of the police power. A statute to be within this power must be reasonable in its operation upon the persons whom it affects, and not unduly oppressive. The validity of a police regulation therefore primarily depends on whether under all the existing circumstances the regulation is reasonable and whether it is really designed to accomplish a purpose properly falling within the scope of the police power." 6 R. C. L. p. 236.

"All statutory restrictions of the use of property are imposed upon the theory that they are necessary for the safety, health, or comfort of the public. . . . Regulation which impairs or destroys rather than preserves . . . is within the condemnation of constitutional guaranties." 6 R. C. L. p. 239. See also 12 C. J. 934.

While it is true, a license is generally held to be neither a contract nor property, within the technical definitions of those terms, it is nevertheless a personal right or franchise, which in many instances has great value. In the case at bar, for instance, the revocation of plaintiff's license (if sustained) deprives him of the right to pursue the vocation whereby he earns his livelihood, destroys an established business, and casts upon him the odium of having committed illegal acts, and being unworthy of permission to continue in his business.

Manifestly few determinations can in a greater degree affect the rights to acquire, possess, and protect property and reputation, and to pursue and obtain happiness (which are guaranteed to all men by § 1 of the state Constitution), than the determination of the dairy commissioner to revoke petitioner's license.

While the legislature may doubtless confer discretionary powers upon administrative boards or officers to grant or withhold or revoke licenses or permits to carry on trades or occupations, or perform acts, which are properly the subject of police regulation (although it has been held in some of the state courts "to be contrary to the spirit of American institutions to vest this dispensing power in the hands of a single individual," see Chicago v. Trotter, 136 Ill. 430, 26 N. E. 359; Re Frazee, 63 Mich. 396, 6 Am. St. Rep. 310, 30 N. W. 72; State v. Fiske, 9 R. I. 94; Baltimore v. Radecke, 49 Md. 217, 33 Am. Rep. 239; Sioux Falls v. Kirby, 6 S. D. 62, 25 L.R.A. 621, 60 N. W. 156), the regulations must be reasonable and the power conferred exercised in a lawful and constitutional manner. 17 R. C. L. pp. 538–542.

"In such cases the doctrine is, in the absence of anything upon the face of the law to the contrary, that the discretion vested in such tribunal, board, or official, is a judicial or legal discretion, and it will not be presumed, in absence of proof to the contrary, that it has been, or is being, used in an unreasonable, arbitrary, or oppressive manner." But when the law vests absolute and arbitrary discretion in a board or official, without right of appeal therefrom, to grant or refuse or revoke a license for conducting a legitimate business; or when the power granted to such administrative board or officer is shown to have been arbitrarily exercised under sanction of state authority, the party thus unlawfully oppressed may secure redress in the courts. 4 Enc. U. S. Sup. Ct. Rep. 368, 369, 372. See also 17 R. C. L. p. 539, note 20.

And even in cases involving revocation of licenses in the exercise of official discretion, the courts have not refrained from inquiring into the facts far enough to ascertain whether the facts presented a case for the exercise of reasonable discretion, or whether the power of revocation had been, or was attempted to be, exercised capriciously, arbitrarily, or oppressively. William Fox Amusement Co. v. McClellan, 62 Misc. 100, 114 N. Y. Supp. 594; Edelstein v. Bell, 91 Misc.

620, 155 N. Y. Supp. 590; Bainbridge v. Minneapolis, 131 Minn. 195, L.R.A.1916C, 224, 154 N. W. 964.

It should be remembered that the business sought to be regulated by the statutes under consideration is one inherently lawful and beneficial to society. In dealing with licenses for the conduct of business of this nature, the courts have not hesitated to set aside measures vesting arbitrary powers in boards (or especially in a single individual) to issue or revoke licenses, or to set aside the arbitrary acts of such board or individual, when acting under a law fair on its face. In Yick Wo v. Hopkins, 118 U. S. 356, 30 L. ed. 220, 6 Sup. Ct. Rep. 1064, the Supreme Court of the United States held an ordinance of the city and county of San Francisco, providing that it should be unlawful for any person to engage in the laundry business within the corporate limits "without having first obtained the consent of the board of supervisors, except the same be located in a building constructed either of brick or stone," to be violative of the 14th Amendment to the Federal Constitution.

In determining the reasonableness of a license statute, the nature of the business sought to be regulated must be considered. For it is self-evident that there is a vast distinction between a license granted for the conduct of a business which is inherently lawful and harmless and relating to a subject which is useful to the community, and one granted for the conduct of a business which is inherently dangerous, or "which ministers to and feeds upon human weakness and passions." Manifestly, conditions and restrictions placed upon licenses of the latter kind, and entirely reasonable as applied to such licenses, might be entirely unreasonable as applied to licenses of the former kind. This distinction was expressly recognized and pointed out by the Supreme Court of the United States in Crowley v. Christensen, 137 U. S. 86, 34 L. ed. 620, 11 Sup. Ct. Rep. 13. That case involved a retail liquor dealer's license. The validity of the ordinance and the action of the police commissioners in refusing to issue a license were assailed. It was asserted that the ordinance was invalid under the principle announced in Yick Wo v. Hopkins, supra, as a delegation of arbitrary discretion to the police commissioners. In distinguishing the two cases, the Supreme Court of the United States, said: "It will thus be seen that that case [Yick Wo v. Hopkins] was essentially different

from the one now under consideration, the ordinance there held invalid vesting uncontrolled discretion in the board of supervisors *with reference to a business harmless in itself and useful to the community; and the discretion appearing to have been exercised for the* express purpose of depriving the petitioner of a privilege that was extended to others. *In the present case the business is not one that any person is permitted to carry on without a license, but one that may be entirely prohibited or subjected to such restrictions as the governing authority of the city may prescribe."* 137 U. S. 94, 95.

One of the most effective safeguards against the arbitrary acts of public officials is an opportunity to be heard. And the weight of judicial authority seems to support the doctrine that a person engaged in a business inherently lawful and useful to society may not be deprived of the license to conduct it, without opportunity to defend his right to maintain it. The right to a full and fair hearing by an applicant for a license was recognized and upheld in Hart v. Folsom, 70 N. H. 213, 47 Atl. 603. Cited in the majority opinion. And it has been said that the theory that a person may be deprived of a license without an opportunity to be heard in his own defense "is so opposed to the principles of the common law that any fact affecting the rights of an individual shall be investigated and determined *ex parte,* and without opportunity being afforded to the party to be affected thereby to be heard," that a law ought not to be construed as contemplating such procedure unless that purpose is expressed in the plainest terms. State ex rel. Powell v. State Medical Examining Bd. 32 Minn. 324, 50 Am. Rep. 575, 20 N. W. 238.

In considering the question of revocation of a license to practise law, the Supreme Court of the United States said: "Before a judgment disbarring an attorney is rendered, *he should have notice of the grounds of complaint against him, and ample opportunity of explanation and defense. This is a rule of natural justice, and should be equally followed when proceedings are taken to deprive him of his right to practise his profession, as when they are taken to reach his real or personal property.* . . . The principle that there must be citation before hearing, and hearing or opportunity of being heard before judgment, is essential to the security of all private rights. Without its observance no one would be safe from oppression where-

ever power may be lodged." Ex parte Robinson, 19 Wall. 512, 22 L. ed. 208. See also People use of State Bd. of Health v. McCoy, 125 Ill. 289, 17 N. E. 786; State v. Schultz, 11 Mont. 429, 28 Pac. 643.

Leaving constitutional consideration on one side, the idea that an individual appointive, administrative official may revoke a license for the conduct of a lawful business, without affording the licensee a full opportunity to be heard, is so contrary to the spirit of our institutions, that it ought not be presumed that the legislature intended to confer such power or prescribe such procedure unless it has said so in express terms.

The power to issue and revoke licenses is vested in the dairy commissioner, and no provision is made for an appeal from his decision. The dairy commissioner is appointed by the commissioner of agriculture and labor. Comp. Laws 1913, § 2836. Chapter 103, Laws 1917, empowers the dairy commissioner "to revoke any license issued under the provision of this act *if the holder is convicted of a failure to comply with the State Dairy Laws.*" And chapter 105, Laws 1917, authorizes the dairy commissioner "to revoke a license *on evidence that licensee has violated any of the existing dairy statutes, or has refused to comply with all lawful requests of the dairy commissioner or his authorized agents.*" There are many statutory provisions relating to the business of operating creameries and cream stations. The test for milk and cream is carefully and minutely prescribed by the statute. Comp. Laws 1913, § 2853. And it is made a misdemeanor "to use any other means of determining the amount of butter fat in milk or cream than the Babcock test, or to use any other size of milk measure, weight, test tubes, or bottles" than those described in the statute, or "to manipulate, underread, or overread the Babcock test." Comp. Laws 1913, §§ 2853, 2854, 2861.

The words "convicted" and "evidence" have well-settled, legal meanings. Manifestly, under our laws no one can be "convicted" without being afforded an opportunity to be heard in his defense, and mere rumors and hearsay statements, not made matters of record, but whispered in secret to a public officer, do not constitute evidence which may form the basis for an official act, requiring the exercise of judgment and discretion. Yet, in the case at bar, the dairy commissioner attempted to revoke a valuable franchise, held by the petitioner, for

the avowed reason that the petitioner had committed criminal acts,—and this adjudication was made solely upon rumors or hearsay statements, and without the petitioner being afforded an opportunity to be heard.

"When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power. . . . The fundamental rights to life, liberty, and the pursuit of happiness, considered as individual possessions, are secured by those maxims of constitutional law which are the monuments showing the victorious progress of the race in securing to men the blessings of civilization under the reign of just and equal laws, so that, in the famous language of the Massachusetts Bill of Rights, the government of the commonwealth "may be a government of laws, and not of men." For, the very idea that one man may be compelled to hold his life, or the means of living or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself." Yick Wo v. Hopkins, 118 U. S. 356, 30 L. ed. 220, 6 Sup. Ct. Rep. 1064.

The majority members hold that, inasmuch as the petitioner requested and obtained a hearing before the commissioner of agriculture and labor, he is bound by the decision rendered by such official. I believe this conclusion to be erroneous. The commissioner of agriculture and labor is an administrative officer. He has such powers only as are conferred upon him by law. N. D. Const. § 83. It is conceded by the majority members that the commissioner of agriculture and labor has no authority under our statutes to review the actions of the dairy commissioner with respect to the revocation of licenses issued under the Dairy Statutes. This being so, how can a hearing before him be of any consequence? If such hearing constitutes due process, and the parties become bound by the determination, then by similar process of reasoning it should be held that parties who go before a justice of peace and litigate title to realty, or some other question outside of the justice's jurisdiction, become bound by, and estopped to question to validity of, the decision; or that parties by submitting a controversy

to a person selected by them clothes the person selected with authority to render a binding decision upon the questions submitted.

It is also suggested in the majority opinion that a party who accepts a license under the provisions of a statute is precluded from assailing the validity of any of the conditions imposed by the statute. Under the view I have taken of the case, the question is not necessarily involved, as in my opinion the statutes contemplate that the licensee shall have notice, and full opportunity to be heard, before his license is canceled; and that whatever discretion the dairy commissioner has with respect to the issuance or revocation of licenses must be exercised fairly and impartially, in harmony with the fundamental principles of American institutions.

In this connection, however, I deem it proper to observe that while it is true that a person may, under certain circumstances, waive the right to question the constitutionality of a statute, and may (with certain exceptions) even waive constitutional provisions intended for his benefit, it does not follow that a person who accepts a license will be deemed to have assented to conditions or restrictions sought to be imposed in violation of his constitutional rights.

In considering this question the Supreme Court of the United States said: "The defendant, however, insists that some of the provisions of the statute are in violation of the Constitution of the United States, and if it obtained the required license, it would be held to have accepted all of its provisions, and (in the same words of the statute) 'thereby to have agreed to comply with the same' § 1. The answer to this question is that the acceptance of a license, in whatever form, will not impose upon the licensee an obligation to respect or to comply with any provisions of the statute or with any regulations prescribed by the State Railroad and Warehouse Commission that are repugnant to the Constitution of the United States. A license will give the defendant full authority to carry on its business in accordance with the *valid* laws of the state and the *valid* rules and regulations prescribed by the Commission. If the Commission refused to grant a license, or if it sought to revoke one granted, because . . . the licensee in the other refused to comply with statutory provisions or with rules or regulations inconsistent with the Constitution of the United States, the rights of the applicant or the licensee could be protected and enforced by

appropriate judicial proceedings." W. W. Cargill Co. v. Minnesota, 180 U. S. 452, 45 L. ed. 619, 21 Sup. Ct. Rep. 423. See also San Francisco v. Liverpool & L. & G. Ins. Co. 74 Cal. 113, 5 Am. St. Rep. 425, 15 Pac. 380; Hibbard v. State, 65 Ohio St. 574, 58 L.R.A. 654, 64 N. E. 109.

The majority members also hold that petitioner has mistaken his remedy. It is stated that his remedy, if any, is mandamus, and not certiorari.

Under our statute "the writ of mandamus may be issued . . . to any inferior tribunal, corporation, board or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person." Comp. Laws 1913, § 8457.

And, "a writ of certiorari may be granted . . . when inferior courts, officers, boards or tribunals have exceeded their jurisdiction and there is no appeal, nor, in the judgment of the court, any other plain, speedy and adequate remedy." Comp. Laws 1913, § 8445.

Mandamus lies to compel action to be taken by the inferior body or officer. Certiorari lies to review action which has been taken by an inferior body or officer. 11 C. J. 90; 26 Cyc. 142. While mandamus may be invoked to compel the exercise of official discretion, it cannot compel such discretion to be exercised in a particular way (26 Cyc. 159). Nor can such discretion be controlled or reviewed by mandamus, when it has once been exercised. State ex rel. Dakota Hail Asso. v. Carey, 2 N. D. 36, 49 N. W. 164; Sawyer v. Mayhew, 10 S. D. 18, 71 N. W. 141.

The rule generally prevailing is that only acts judicial or quasi judicial in their nature are reviewable by certiorari. But under the laws of this state the writ is not confined to a review of judicial or quasi judicial proceedings, but extends to every case where the inferior courts, officers, boards, or tribunals have exceeded their jurisdiction, and there is no writ of error, appeal, nor, in the judgment of the court, any other plain, speedy and adequate remedy. State ex rel. Johnson v. Clark, 21 N. D. 517, 131 N. W. 715. See also 11 C. J. 121.

And "it is a general rule of the common law that when a new juris-

diction is created by statute, and the court or officer exercising it proceeds in a summary way or in a course not according to the common law, and a remedy for the revision of its exercise is not given by the statute creating it, certiorari will lie." 4 Enc. Pl. & Pr. 73.

In State ex rel. Johnson v. Clark, supra, this court reviewed the action of the city council of the city of Minot in annexing certain territory to such city, and held that the claim "on the part of the petitioner that the city council did not have jurisdiction to act by reason of the failure to post and print notices" of the annexation proceeding, constituted such attack upon the jurisdiction of the city council as to make it a proper question for review by certiorari. And it seems that the authorities generally hold that action taken without legal notice constitutes an "excess" of jurisdiction and is reviewable by certiorari. 11 C. J. 105; 4 Enc. Pl. & Pr. 93.

It seems to me that under the rule laid down in State ex rel. Johnson v. Clark, supra, the question raised by the petitioner that the dairy commissioner exceeded his jurisdiction in revoking the license without giving the petitioner notice and an opportunity to be heard, is one properly reviewable by certiorari. There is no question of fact presented. The questions presented are purely questions of law, with respect to the powers and jurisdiction of the dairy commissioner. It is conceded that he revoked petitioner's license without notice, and without affording him an opportunity to be heard; and that the dairy commissioner based his action upon rumors or hearsay statements submitted to him in the absence, and without the knowledge, of the petitioner. In my opinion such action was wholly unwarranted under the statutes, and contrary to the principles of natural justice.

The view I have taken of the statutes involved in this proceeding renders it unnecessary to determine to what extent the legislature may regulate the business of purchasing milk and cream, and I therefore express no opinion as to whether the license regulations contained in chapters 103 and 105, Laws 1917, are reasonable or unreasonable.

ROBINSON, J. (dissenting). In this case it appears that in August, 1917, at Hazen, North Dakota, Cofman, the appellant, was conducting a cream station under a license from the dairy commissioner, issued in May, 1917. On August 3d, the commissioner wrote a letter to Cof-

man, purporting to revoke his license, and directed him to close his cream station by August 15th. This revoking letter was written without any prior notice to Cofman and without giving him any hearing or any opportunity to refute the charges made against him. That charge, as stated in the letter, was that he had "overread the cream tester on one can of cream as much as 4 per cent, and that on two cans the weight was 2 pounds short."

Cofman appealed to the Commissioner of agriculture and labor, and though the statute does not provide for any such appeal, yet as a matter of courtesy Cofman was given a chance to prove his innocence. He claimed that, until specific charges were made against him and until proven guilty by competent testimony, his innocence should be presumed; but the commissioners held that the license was not a property right, and that it was merely a gratuitous permission which might be revoked without a hearing and without cause. However, without making any formal charge against Cofman and without any findings of fact, the commissioner of agriculture heard evidence and made a grandiloquent order and decree affirming the order of the dairy commissioner. From an order of the district court denying a review by certiorari, Cofman appeals to this court. The whole procedure is based on a gross misconception of the law. A license may or it may not involve any property right, but a license to conduct a cream station or a creamery, to practise law or medicine, or to follow any business vocation, is a property right, of which a person may not be deprived in an arbitrary manner and without due process of law. By due process of law is meant the law which hears before it condemns, which proceeds upon inquiry and renders judgment only after trial.

On May 15, 1917, Cofman was issued a license to conduct a cream station at Hazen. It was issued under chapter 103, Laws 1917. The license is granted to a qualified person for one year upon payment of a fee of $2 and renewed on payment of $1. And the dairy commissioner is given authority to revoke any license if the holder is "convicted of a failure to comply with the State Dairy Laws." To convict is to prove and find guilty of an offense, crime, or wrong. The statute gives no authority to revoke a license until the holder has been tried and convicted of a failure to comply with the Dairy Laws. In law there can be no conviction of a wrong without a formal written accusa-

tion and a fair opportunity for a trial. And until the accused is proven guilty, he is presumed to be innocent. He may not be called upon to prove his innocence. He must be confronted with the witnesses against him, and have a reasonable opportunity to cross-question them and to disprove their testimony.

Cofman had none of these opportunities and guaranties. The commission acted as if they had an absolute right to revoke the license without any written accusation or any conviction of wrong.

As the whole record is before this court, there is no reason for a writ directing the dairy commissioner or the secretary to duplicate and certify the same; and in regard to the merits of the case, there is no question of doubt. There is no charge or evidence that Cofman did wilfully overread his cream tester, or underread the weight of his two cans of cream, and there is no claim that on such reading any person can be always perfect and accurate, or that the cream tester is always perfect and accurate, and the same is true of the different scales used in weighing cream cans, and from the record now before the court it does appear that the revocation of the license and the whole procedure was absolutely void.