# THE STATE OF NORTH DAKOTA EX REL. I. A. JOHNSON,

as Relator and One of the Trustees and Officers of the Village of North Minot, a Corporation, Organized and Existing under the Laws of the State of North Dakota, and I. A. Johnson, as a Resident and Property Owner and Taxpayer of Said Corporation, and as a Property Owner and Taxpayer of Harrison Township, a Corporation, Organized and Existing under the Laws of the State of North Dakota, v. SAM H. CLARK, Mayor of the City of Minot, Lisle Thompson, Auditor of the City of Minot, R. H. Emerson, N. Davis, P. S. Anderson, H. A. Hurd, T. J. McLaughlin, E. D. Kelly, J. B. Reed, J. H. Scofield, A. LeSueur, Nicholas Hendrickson, P. Vandenoever, and Fred Spath, Aldermen of the City of Minot, and the City of Minot, a Corporation, Organized and Existing under the Laws of the State of North Dakota.

(131 N. W. 715.)

**Municipal Corporations — Village Incorporation — Jurisdiction.**

1. The date of the filing with the board of county commissioners of a petition for village incorporation, and not the date of the petition itself, gives such board jurisdiction to act.

**Municipal Corporations — Annexation of Territory — Conflicting Jurisdiction.**

2. Power being given over the same territory to two bodies authorized to act, exclusive jurisdiction vests in the party first acting under the power; hence -the city council of Minot, having secured jurisdiction March 18, 1909, had exclusive jurisdiction as against the board of county commissioners, to whom

Note.—The question of the purpose and scope of a writ of certiorari is the subject of a note in 40 Am. St. Rep. 30, and, as shown by the authorities there considered, when there is a new or summary jurisdiction created, the proceedings so authorized, whether in a court or not, if of a judicial or quasi judicial character, and not subject to review by writ of error nor by appeal, may be removed to and reviewed by a superior court, by virtue of the writ of certiorari. And that certiorari will lie in some cases, even where there is a remedy by appeal, is shown by a note in 50 L.R.A. 787, though it is difficult to lay down a fixed rule as to when the writ will be awarded in a case where an appeal is provided. This difficulty is exemplified by the two cases to which the note is appended, in one of which the writ was granted, and in the other refused. These two cases were decided by the same court and by a divided court in each instance, and in one case with an interdivision of the concurring judges.

a petition was presented for a village incorporation April 7, 1909, by the citizens of North Minot.

### Municipal Corporations — Annexation of Territory — Nature.

3. The legislature having designated the method of giving notice of the proceedings of the city council with reference to resolutions extending their boundaries, such method cannot be enlarged or diminished by any act or resolution of the city council. Accordingly, *held*, that the notice published and posted in this case complied with the statute, and gave the city council jurisdiction to act.

### Municipal Corporations — Powers of Council — Legislative Function.

4. A city council, in passing resolutions and proceeding to add outlying ter-. ritory to the limits of the city, calls into motion the exercise of a legislative function.

### Certiorari — Grounds — Officers — Review.

5. Under the statute of this state, § 7810, Rev. Codes 1905, a writ of certiorari is not confined to a review of judicial or quasi judicial proceedings, but extends to every case where the inferior courts, officers, boards, or tribunals have exceeded their jurisdiction, and there is no writ of error, appeal, nor, in the judgment of the court, any other plain, speedy, and adequate remedy.

### Certiorari — Other Remedy — Quo Warranto.

6. Considering the necessities of the people affected by the orders in this proceeding, without deciding whether the matters could be determined by an action in the nature of quo warranto, it is not certain that that remedy would be speedy and adequate. In such cases the writ should be granted.

### Certiorari — Words and Phrases — "Beneficially Interested."

7. A citizen and a taxpayer of the territory known as North Minot is a party beneficially interested, under the provisions of § 7811, Rev. Codes 1905, which requires that "the application must be made and filed by the party beneficially interested," following the rule laid down in State ex rel. Dakota Hail Asso. v. Carey, 2 N. D. 40, 49 N. W. 164. Hence this proceeding was properly brought by and entitled in the name of, the State ex rel. I. A. Johnson, who was a citizen, taxpayer, and officer of the village of North Minot.

### Appeal and Error — Review Upon Record Only.

8. An appellate tribunal cannot go outside of the record as settled by the lower court, and be guided by statements of counsel in his brief, which have not been incorporated into and made a part of the record by such lower court.

Opinion filed May 2, 1911.

Appeal from District Court, Ward county; *Goss,* Judge.

Application by the state, on the relation of I. A. Johnson, as relator and one of the trustees and officers of the village of North Minot,

and as a resident and property owner and taxpayer of said corporation, and as a property owner and taxpayer of Harrison township, against Sam H. Clark, mayor of the city of Minot, and others, and the city of Minot, for writ of certiorari. From an order and judgment setting aside an action of the city council of Minot in attaching certain territory, defendants appeal.

Reversed and petition dismissed.

*R. H. Bosard* and *G. W. Twiford,* for appellants.

*James Johnson,* for respondent.

POLLOCK, Special J. The matters in controversy in this proceeding were instituted in the lower court by the issuance of a writ of certiorari. The record discloses the following facts:

On the 18th day of March, 1909, the city council of the city of Minot, North Dakota, passed a certain resolution extending the limits of said city to include what is now known as North Minot. In said resolution, among other things, we find the following:

"Whereas, the city of Minot is a city incorporated under the general laws of the state of North Dakota, and has more than 5,000 inhabitants, and

"Whereas, the present territory included in the city limits thereof contains 2,000 acres; and

"Whereas, there is adjacent to said city of Minot a tract of land containing about 200 acres, of which more than two thirds has been heretofore platted into lots and blocks;

"Now, therefore, be it resolved by the city council of the city of Minot, that the boundaries of said city of Minot, North Dakota, be extended so as to include and incorporate within the city limits of the city of Minot the following described land, and the boundaries of which territory proposed to be incorporated are as follows."

Then follows a description of the property. And it was further resolved:

"That this resolution be published in the Ward County Independent, the official paper of the city of Minot, once each week for two successive weeks."

The record shows that this resolution was passed and adopted on the 18th day of March, 1909, signed by Sam H. Clark, Mayor, and duly attested by George L. Morrow, City Auditor.

The validity of this order and the proceedings had thereunder are now before the court for review.

The record further shows that the resolution above referred to was published in the official paper of said city of Minot, on the 18th and 25th days of March, but at that time no notices were posted. Apparently from examination of the law and the acts of the defendants, there was some controversy as to whether the notices should have been published two or three times. In any event, the resolution was again published in the official paper of said city, in every copy of each issue of said newspaper, for a period of three consecutive weeks, to wit: April 15th, 22d and 29th, 1909.

The record further shows that on the 10th day of April, 1909, there was posted in five public places in the city of Minot a typewritten copy of the above resolution.

On the 3d day of April, 1909, there was filed with the city council a remonstrance from residents and property owners residing upon the property described in said resolution of March 18th. This remonstrance was signed by forty-two persons residing within the limits of the territory sought to be annexed. Whereupon the city council fixed Monday, April 12th, at 8 o'clock P. M., as a time for hearing the parties who desired to protest. At said hearing it was discovered that the resolution had only been published twice, and the mayor informed the citizens of North Minot and Harrison township, who were protesting, that no further proceedings would be had at that time, and that they would be notified when further action would be had. That thereafter the three publications, on April 15th, 22d and 29th, took place, and the notices were posted as aforesaid on April 10th. Whereupon another protest was filed by the parties in interest, and they were cited to appear before the city council on May 18th, 1909, at which time the citizens of North Minot and Harrison township, being property owners of the land described in said resolution, appeared before said city council, and an adjournment was again had until May 21st, at which time another adjournment took place till May 28th, when the objection of the taxpayers and protestants to said annexation was heard before said city council.

Among other things, the following objections were noted: That, on April 7th, 1909, a petition which was dated March 5, 1909, was presented to the board of county commissioners of Ward county, by

more than one-third of the legal voters residing within the territory known as North Minot, for the incorporation of said territory into a village to be known as North Minot, and that, on April 9th, 1909, such proceedings were had by the said board of county commissioners, having had the same under consideration, which finally resulted in an election being held in said North Minot on April 17th, to permit the qualified electors to vote upon the question of incorporation; and that at such election forty-five ballots were cast, forty-three thereof being in favor of, and two against, such incorporation. That, at a meeting of the said board of County Commissioners on April 27th, 1909, they passed a resolution in which they referred to the petition filed April 7th and the proceedings had thereunder, the election and the result thereof; and made a final order as follows:

"Therefore, the board of county commissioners of Ward county does hereby declare and order that the said territory has been and it is incorporated as a village by the name of North Minot."

At the several hearings had before the city council of Minot the protestants appeared, objected to the proceedings, and filed their exceptions to the rulings made by the city council. The final order of the city council of Minot was made by a resolution which was dated May 29th, 1909, in which it was resolved, among other things:

"That the limits of said city of Minot be, and the same are hereby extended as follows: (Here follows a description of the property.) And that said territory hereinbefore described, and the whole thereof, is a part of the city of Minot, and within the corporate limits thereof."

Same was passed and adopted by eight aldermen present, there being absent and not voting four. It will thus be seen that the original action of the city council was dated March 18th, while the final order therein was not made until May 29th; that the original application to the board of county commissioners upon the part of the people of North Minot, to be incorporated as a village, was filed April 7th, and the final order therein by the said board, making it a village, was made April 27th, 1909.

The defendants claim to have proceeded under the provisions of article 20, page 582, of the Political Code, beginning at § 2822, Rev. Code, 1905, as amended by senate bill No. 220, being chapter 58, page 49, Laws of 1909, which, in substance, under § 2825, permits,

"Any city of this state, whether organized under the general law or

under a special charter, and without regard of the number of its inhabitants, may so extend its boundaries as to increase the territory within the corporate limits not to exceed one half of its present area, by a resolution of the city council passed by two thirds of the entire members-elect, particularly describing the land proposed to be incorporated within the city limits setting forth the boundaries of the territory proposed to be incorporated, . . . may be so incorporated within such limits by the passage of a resolution, as is herein before provided, for the extension of limits.

Section 2826 provides, in substance, that the resolution of the city council shall be published in the official newspaper of the city twice, once in each week's issue for two successive weeks, and printed or typewritten copies of such resolution shall also be posted in five of the most conspicuous places within the territory proposed to be annexed, etc. The same section provides for protests and the hearings to be had thereon, personal inspection by the city council, and provides in substance that if, in their opinion, such territory ought to be annexed, they may so annex it by the passing of the resolution above referred to,

The objections made by the plaintiff to the proceedings are, in substance, that the council acted without jurisdiction because of a failure to properly publish and post the notices, as required by law, insisting that there should be three publications, and further claiming that only two publications having been made in the first instance, and that no notices having been published prior to April 10th, thereby the city council lost jurisdiction and all their acts thereafter were void; and, second, because, even if the notices were given properly, the village of North Minot was officially organized by the board of county commissioners by virtue of the order of said board dated April 27th, which was made about a month prior to the final order of the city council of Minot, which occurred May 29th. It is likewise contended by counsel for the plaintiff that the date of the petition (March 5th, 1909), and not the date of the filing thereof with the county auditor (April 7th, 1909), is what gave that board jurisdiction, and he claims, therefore, that the resolution of the city of Minot being dated March 18th, 1909, if it gave the said city and jurisdiction whatever, was later in point of time than the jurisdiction which was secured by the board of county commissioners, with reference to the petition filed with them.

Certain other questions arise upon this record, among which are those relating to the procedure and the power of this court to grant writs of certiorari in cases like the one at bar.

A decision upon the following eight questions involved, it appears to us, will settle the entire controversy.

## I.

We are of the unanimous opinion that the date of the petition of the citizens of North Minot could not in any manner be considered as a point of time when the jurisdiction of the board of county commissioners would begin, even if it did begin; but, rather, all the authorities agree that the jurisdiction to act in any matter similar to this takes place at the time of the filing of the petition, which, in this instance, was April 7th, 1909. We therefore hold that the jurisdiction of the city council of Minot, having been invoked on March 18th, 1909, preceded that of the board of county commissioners.

## II.

In view of the fact that the city council obtained jurisdiction March 18th, 1909, could they be ousted of that jurisdiction by the operation of any other board or tribunal, and does the fact that the final order of the board of county commissioners was made prior to that of the city council in any manner affect the proceedings of such city council? It would be an anomalous situation, indeed, if co-ordinate bodies exercising governmental powers could operate upon the same subject-matter at one and the same time, and thus enter upon a race to accomplish an object similar to that permitted by the legislation in this instance. The legislature of the state has undoubted power to organize the people within the state into cities and villages, Section 130 of the Constitution provides: "The legislative assembly shall provide by general law for the organization of municipal corporations." It has been deemed wise to provide, under certain conditions, that villages may be incorporated by order of the board of county commissioners, and likewise that larger numbers of people may become organized into cities under a general incorporating act. It often happens that there are many people living upon the outskirts of these

larger cities thus organized, who are in a large way securing the benefits of the growth and development of such cities, and we must assume that the legislature, in passing the act in question with reference to enlarging the limits of such cities, had due regard to the general benefit to be derived to all the people, both in and out of the city, by virtue of such enlargement. Confusion could only result from permitting two bodies to proceed in the formation of such corporation. Every possible reason suggests the propriety of permitting that body which first secures jurisdiction, to proceed in determining the questions involved. The act in question provides for a full hearing, and at every step, as shown by the record, the people of North Minot were present before the city council, giving evidence and participating in the proceedings had before that body. Courts frequently have co-ordinate jurisdiction over certain controversies, and it is always held in such cases that the court first securing jurisdiction retains it, to the exclusion of any other court throughout the entire litigation. The safety of litigants demands this, and the same principle is involved where the organization of cities or villages is concerned. As stated by Osborn, Justice, in Taylor v. Ft. Wayne, 47 Ind. 280:

"The exercise of the powers conferred upon the trustees of towns incorporated under the act in question would be inconsistent with the exercise of those conferred upon cities under the act authorizing their organization within the same territory at the same time. That is so glaring and manifest that an enumeration and comparison of the powers and duties of the two sets of officers are unnecessary. 'There cannot be two corporations for the same purposes, with coextensive powers of government extending over the same district.' . . . 'There cannot be two such effective corporations in the same place; for, instead of good order, that would only be productive of anarchy.' . . . 'There cannot be at the same time, within the same territory, two distinct municipal corporations, exercising the same powers, jurisdiction, and privileges.' . . . The proposition that two independent governments cannot exercise the same powers, within the same district, at the same time, is a self-evident one." See People ex rel. Hathorne, v. Morrow, 181 Ill. 315, 54 N. E. 839; Independent Dist. v. Sioux County, 51 Iowa, 658, 2 N. W. 591.

"It is a clear [and settled] principle of jurisprudence that when there exists two tribunals possessing concurrent and complete juris-

diction of a subject-matter, the jurisdiction becomes exclusive in the one before which proceedings are first instituted, and which thus acquires jurisdiction of the subject." Taylor v. Ft. Wayne, supra.

We therefore, hold that the city council of Minot, having first acquired jurisdiction, secured also the duty to retain it and proceed to a final hearing and disposition of the application as prescribed by law.

### III.

Did the city council of Minot lose the jurisdiction which it secured March 18th by the manner of the publication and posting of the notices? Counsel for the plaintiff has insisted all the time that it did. He suggests that the protestants called the attention of the city council to this error. He asserts, in substance, that, having published the notice on March 18th and 25th, and having failed to post the notices at that time, by reason of this, the city council lost jurisdiction. We are unable to agree with counsel in this contention. As well might you say that the power of sale in a mortgage became void if the mortgagee, in attempting to foreclose it by advertisement, finding that there was an error in the publication, abandoned the first publication, and proceeded to and did republish the notice in full compliance with law. The record in this case shows that the notice was published not only the two times mentioned, but likewise upon April 15th, 22d, and 29th, and that the notices required by law were posted on the 10th day of April, 1909.

Somewhat of stress is laid upon the fact that the notices were not published according to the requirement of the council in the resolution. That is wholly immaterial. That part of the resolution was simply surplusage. The city council had no power to either enlarge or limit the notice required by the statute. The statute itself defines how the notice of the resolution shall be printed and posted, and the record in this case shows a full compliance with the requirements of the statute. It is not claimed by the plaintiffs in this action that they did not have notice. Indeed, the record shows that they not only were informed of all the proceedings, but were constantly present, and protesting against them; so that, viewed from every standpoint, both legal and equitable, no claim can be urged as against the proceedings in

this particular. It is not contended that the legislature did not have power to annex the territory under the provisions of this act, and the only question before us is whether or not the city council and those acting for it strictly complied with the terms of the statute.

## IV.

The next question which arises fairly upon this record is whether the acts of the legislature were administrative, legislative, or judicial in their nature. A settlement of this question is only important in view of the fact that it is contended that the writ of certiorari does not properly lie to review this proceeding. We are of the unaminous. opinion that this question has been settled by a previous adjudication of this court. In Glaspell v. Jamestown, 11 N. D. 86, 88 N. W. 1023, where the court had under examination, a question involving the corporate limits of a city, Judge Morgan, in speaking for the court, among other things, stated:

"It is a fundamental principle of law, and recognized by § 130 of the Constitution of this state, that the creation of municipal corporations is a legislative function. Such corporations, are created pursuant to legislative enactments only. . . . This proceeding contemplates a change in such corporate limits. Such change of corporate limits is effectuated under the application of no different principles. than the organization of the corporation originally. . . . The welfare of the inhabitants should be consulted in each instance. . . . This seems to us to involve the exercise of what is clearly legislative discretion. . . . If the boundaries of municipal corporations can be altered and changed by the legislature in its discretion,—and the authorities are all that way,—then it is impossible that the courts can be invested with such power. . . . Furthermore, the provision authorizing the court to enlarge or diminish the boundaries of the village, as justice may require, seems to be as equally an exercise of legislative power."

From these quotations it is manifestly clear that a city council. in extending their boundary limits, call into play the exercise of a legislative function.

## V.

We are now confronted with the question whether the writ of certiorari may be invoked to review the legislative acts of the city council of Minot. It is contended by counsel for the defendants that the writ, under our statute, cannot have so wide a scope, but, rather, can only be used in cases where the act under consideration is of a judicial or quasi judicial nature. The precise scope of the writ of certiorari has never been settled in this state. Section 7810 of the Revised Codes 1905 reads as follows:

"A writ of certiorari may be granted by the supreme and district courts when inferior courts, officers, boards, or tribunals have exceeded their jurisdiction, and there is no appeal, nor, in the judgment of the court, any other plain, speedy, and adequate remedy."

It would be interesting to discuss at length the history and development of the writ of certiorari, both at common law and under the statutes of the several states. Such dissertation, however, would be largely academic, in view of the language of our statute. Carried forward, as it was from the territorial Code, North and South Dakota enjoy the distinction of having a writ peculiarly their own.

In the general discussion of the question, there are those, like Judge Mitchell of Minnesota, when speaking for the court in the case of Moode v. Stearns County, 43 Minn. 312, 45 N. W. 435, who believe the writ should not be extended to the examination of the acts of boards and tribunals which are not of a judicial or quasi judicial nature. Such decisions are based upon either the doctrine of the common law or some statute, like California, which limits the inquiry to acts when the inferior tribunal, board, or officer is in the exercise of judicial functions. The California statute, paragraph 1068 (3 Kerr's Cyc. Codes, Cal. page 1574), reads as follows:

"A writ of review may be granted by any court except a police or justice's court, when an inferior tribunal, board, or officer *exercising judicial functions* (the italics are ours) has exceeded the jurisdiction of such tribunal, board, or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy, and adequate remedy."

Our statute, it will be observed, omits the words "exercising judicial functions," and seems to have been prepared in the light of the well-known difference in the adjudications of the several courts upon this

very question. In view of this difference and the express language of our statute, we hold that the district and supreme courts have power to examine into acts of such tribunals as are exercising administrative legislative, judicial, and other functions, for the sole purpose of ascertaining whether they have proceeded according to law. We do not wish to be understood as saying that under this writ the courts have power to invade and control the discretionary authority of such boards and tribunals when proceeding legally, "nor that the district court shall become an asylum for all matters growing out of meetings of such tribunals." The questions for consideration are simply these: Have they jurisdiction, and have they proceeded according to law in the exercise thereof? If they have, then it matters not whether the act complained of is judicial, administrative, or legislative. As to the wisdom of their conclusions thus legally given in this proceeding, we can have nothing to say.

We agree with the interpretation of this statute made by the supreme court of South Dakota in State ex rel. Dollard v. Hughes County, 1 S. D. 292, 10 L.R.A. 588, 46 N. W. 1127, and we quote with approval the language of Judge Kellam found under paragraph 3, 299, of 1 S. D., as follows.

"There is little room for doubt or discussion as to the office of a writ of certiorari at common law, and in many of the states the writ is left as at common law, unaffected by statutory regulations. In other states, the legislature has adopted rules of practice for its issuance and hearing, without materially affecting the reach or scope of the writ, but our statute, inherited from the territory of Dakota, is *sui generis*. It is not only unlike the common law, but equally unlike the law of any other state, so far as we have had the means of pursuing the inquiry. Gathering its meaning and intent from its language, the office of the writ which it authorizes is not confined to a review of judicial or quasi judicial proceedings, but extends to every case where, in the language of such statute, inferior courts, officers, boards, or tribunals have exceeded their jurisdiction; and there is no writ of error, appeal, nor, in the judgment of the court, any other plain, speedy, and adequate remedy, subject only to the further limitation of § 5513 that 'the review upon this writ cannot be extended further than to determine whether the inferior court, tribunal, board, or officer has regularly pursued the authority of such court, tribunal, board, or officer.' Thus

the legislature, whether wisely or unwisely, it is not within the province of this court to inquire, has, in plain and unequivocal terms, extended the scope of the writ in this state so that it fairly brings before us the record of these proceedings, whether judicial or otherwise."

## VI.

Again, it is claimed that there is another remedy which might have been adopted, by an action in the nature of quo warranto, and that the same would afford all proper relief. Herein large discretion of the court must be invoked. As a result of the acts of the city council of Minot, should the same be declared legal, large quantities of property must be added to the tax roll of said city. Various other matters of adjustment must be considered, and it is absolutely necessary, for the safeguarding of the interests of all persons concerned, that the most speedy remedy known to the law should be invoked. In this case, without determining whether an action in quo warranto would be proper, it is not certain that that remedy would have been speedy and adequate. Where such a condition arises, the better authority is that the writ should be granted, and especially where it is alleged that the tribunal below is acting without jurisdiction. 6 Cyc. 745. The special claim in this proceeding on the part of the plaintiff is that the city council did not have jurisdiction to act by reason of the failure to properly post and print notices. This is purely a question of law, and one which attacks directly the jurisdiction of the council, and we believe that it is a proper question to be reviewed by this writ.

## VII.

It is likewise claimed that the relator, I. A. Johnson, is not a party beneficially interested, and that the proceeding should have been instituted by the attorney general or with his consent, Statute 7811, our Code, says: "The application must be made and filed by the party beneficially interested." The record shows that I. A. Johnson is an officer, a citizen and taxpayer of the territory under the resolution added to the city of Minot. We understand that the rule announced by some courts is that a party beneficially interested is one whose interest must be of a nature which is distinctive from that of the mass

21 N. D.—34.

of the community.   Ashe v. Colusa County, 71 Cal. 236, 16 Pac. 783 ;
but we believe that question has been settled by a former adjudication
of this court.   In the case of State ex rel. Dakota Hail Asso. v. Carey,.
2 N. D. 40, 49 N. W. 165, Judge Wallin, speaking for the court and
discussing the questions here involved, says:

"We think it will be proper to add, with a view to settling a very
embarrassing and much controverted question of practice, that in cases.
where the state, as such, is directly interested as a party, the attorney
general should apply for the writ, or in some manner signify his as-
sent to the proceeding; but, on the other hand, where the controversy
does not concern the state, as such, but does concern a large class of citi-
zens in common, as, for example, the citizens and taxpayers of a par-
ticular county, town, city, or district, the required affidavit may prop-
erly be made by any citizen of the locality affected.   In the class of cases.
last referred to, any citizen of the locality affected is, in our opinion,
'beneficially interested,' within the meaning of § 5518, Comp. Laws.
1887.   It follows that, in this class of cases, the writ may be invoked
by any citizen without the concurrence of any officer."

Section 5518 of the Compiled Laws there referred to has reference·
to a writ of mandamus, but the principle involved is exactly the same·
when considering the language of the statute, as it applies to the writ
of certiorari.

We hold, therefore, that I. A. Johnson was a party beneficially in-
terested, and that the title of the action was proper.

## VIII.

Counsel for the plaintiff, on page 2 of his ·brief, uses the following·
language:

"We also wish to call the court's attention to the fact that the abstract.
which had been prepared by the city of Minot was done without any·
acquiescence on the part of the people of the village of North Minot, or·
anyone representing them; and, inasmuch as this abstract does not, in.
our mind, represent the matters as they transpired from time to time,·
we beg leave to make a short statement in our brief as to when, at what
places and times, the different transactions which are to be reviewed
took place."

In response to this suggestion and the statements thereafter made

in the brief, we can only say that this court must necessarily be confined to the record as made and settled by the court below. Outside discussion of what might or might not have happened cannot be considered. The record in this case speaks for itself, and by that the parties and this court must be controlled.

From the foregoing, it follows that the action of the District Court must be reversed, the petition dismissed, and the writ quashed; the defendants to have their costs.

It is so ordered.

MORGAN, Ch. J., not participating, and Goss, J., disqualified. Goss, J., having tried the case below, did not sit in the case in this court, and took no part in the decision, HON. CHAS. A. POLLOCK, Judge of the Third Judicial District, sitting in his stead.