In the Matter of the Petition for Annexation of School District Territory as Follows: Sections 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, the N ½ of Section 14, the N ½ of Section 15, all of Sections 16, 17, and 18 in TOWNSHIP 143 NORTH, RANGE 55 WEST, IN CASS COUNTY, North Dakota, and Sections 25, 26, 27, 28, 29, 32, 33, 34, 35, 36 in Township 144 North, Range 55, West, in Steele County, all a part of Colgate Public School District No. 13–123 to be Detached from said School District and Annexed to Page Public School District No. 80.

In the Matter of the Petition for Detachment from the COLGATE DISTRICT and Annexation to the Hope School District all of Sections 1, 2, 3, 4, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34 and 35, STEELE COUNTY, North Dakota (TOWNSHIP 144 NORTH, RANGE 55 WEST) and the Proposed Dissolution and Attachment of the Colgate District to Adjoining Districts.

Civ. No. 8625.

Supreme Court of North Dakota.

Jan. 19, 1971.

522

Wattam, Vogel, Vogel & Peterson, Fargo, for Steele County Committee for Reorganization of School Districts.

Tenneson, Serkland, Lundberg & Erickson, Fargo, for Page Public School Dist. No. 80.

William Yuill, Asst. State's Atty. for Cass County, Fargo, for Cass County Committee for Reorganization of School Districts.

Leo J. Beauclair, State's Atty. for Barnes County, Valley City, for Barnes County Committee for Reorganization of School Districts.

Gerald W. VandeWalle, Asst. Atty. Gen., Bismarck, for State Board of Public School Education.

ILVEDSON, District Judge.

An appeal was taken to the district court of Cass County from an order of the State Board of Public School Education approving a petition to annex a portion of Colgate Public School District No. 13–123 to the Page Public School District No. 80 of Cass County, denying a petition to annex a portion of the Colgate Public School District to the Hope Public School District No. 10 in Steele County, and denying an approval of the dissolution of the Colgate Public School District. The district court affirmed the order of the State Board of Public School Education and found that the findings of fact made by the said board were supported by the evidence and in accordance with law, and that the appellant had been afforded a fair hearing in compliance with the Administrative Agencies Practice Act, Chapter 28–32, North Dakota Century Code.

This is an appeal from the judgment of the district court affirming the order of the State Board of Public School Education.

Colgate Public School District No. 13–123 consists of 32 sections of land in Steele County and 14 sections in the adjoining Cass County. Page Public School District No. 80 is located in Cass County. Hope Public School District No. 10 is in Steele County. For brevity purposes we will hereafter refer to each of these public school districts as the Colgate District, Page District, and Hope District.

On May 2 and May 3, 1966, a petition was filed with the county superintendents of schools of Steele County and Cass County, respectively, requesting the detachment from the Colgate District and attachment to the Page District of Cass County of certain sections of land in the Colgate District, some of which were located in Steele County and some of which were located in Cass County. These petitions were filed under Section 15–27–04, North Dakota Century Code. It is as follows:

"Attachment of adjacent territory to school district—Petition.—Territory contiguous to a public school district, whether in the same county or in another, may be attached to such school district and detached from the district of which it is a part by the county committee for the reorganization of school districts upon written application signed by two-thirds of the electors residing in the contiguous territory after hearing and subject to the limitations of sections 15–27–06 and 15–53–21."

It is not disputed that the petitions filed contained the required number of signatures. Section 15–27–05, N.D.C.C., sets forth the procedure after such petitions are filed:

"Annexation hearings—Notice of hearings.—Before detaching territory from one school district or annexing territory to another school district, the county committee for the reorganization of school districts shall hold a hearing on the petition therefor. At least fourteen days prior to the time the hearing is to be held, the committee shall cause notice of such hearing to be published in the official newspaper of the county in which the school district is located, or if no newspaper is published in the county, the notice shall be published in a newspaper in an adjoining county in this state. If the adjoining district is in another county, the county committees for the reorganization of school districts of both counties affected may jointly effect the annexa-

tion if a majority of the members of each of the county committees approve the annexation. In the event that a majority of the members of each committee fail to approve the annexation, the county superintendent of the county in which the annexing district is located shall submit the petition to the state committee for school district reorganization for approval or disapproval, and in such instance approval of the petition by the state committee shall have the same effect as approval by the county committees. An appeal from the decision of the state committee may be had to the district court of the county in which the annexing district is located, in accordance with applicable provisions of chapter 28-32."

Section 15-27-07, N.D.C.C., sets forth the effective date of attachment and provides for equalization of assets and liabilities:

"Effective date of attachment or detachment—Equalization—Voting places. —If territory is annexed to a school district or detached therefrom, under the provisions of this chapter, the change in boundaries shall become effective the next July first after the final approval by the state committee unless another effective date is provided for by the county committee or in the petition, and all the assets and liabilities of the district involved shall be equalized as provided in section 15-47-19. If territory is attached to an existing school district, the electors in such attached territory shall vote on school matters at the nearest polling place in the district to which it is attached."

Section 15-47-19, above referred to, provides for an arbitration board to effect an equalization of property, funds on hand, and debts. The above statutory procedure initiated by electors in a school district for the detachment of a portion of their school district and for its annexation to another school district will hereinafter be termed the "annexation procedure."

Subsequent to the filing of the above petitions on May 10, 1966, petitions were filed with the same county superintendents of schools of Steele and Cass Counties under the above annexation statutes requesting the detachment from the Colgate District and attachment to the Hope District of Steele County of certain sections of land in the Colgate District. It is not disputed that these petitions likewise contained the required number of signatures under Section 15-27-04, N.D.C.C.

These were rival petitions because there were nine sections of identical or overlapping land involved in both sets of petitions. Since the Colgate District consisted of land in both Cass and Steele Counties, Section 15-27-05, N.D.C.C., requires joint approval of any proposed annexation by a majority of the members of the county committee for the reorganization of school districts of both counties. If a majority of the members of these committees fail to approve the annexation, the county superintendent of the county in which the annexing district is located may submit the petitions to the state committee for school district reorganization for approval or disapproval. The approval by such state committee has the same effect as approval by the county committees.

By virtue of Section 15-53-03, N.D.C.C., the State Board of Public School Education is the state committee for school district reorganization and we will hereinafter refer to this board as the "State Committee." The county committees for the reorganization of school districts of Cass and Steele Counties will be referred to as the "Cass County Committee" and the "Steele County Committee."

After the filing of the above petitions, there was an attempt by the Steele County Committee to secure approval of the proposed annexation to the Hope District without the joint approval of the Cass County Committee. The Steele County Committee met by itself May 10, 1966, and approved the request of the petition to an-

nex part of Colgate District to Hope District, but rejected the earlier petition filed for annexation to the Page District. The Steele County Committee was able to secure two hearings before the State Committee. At a hearing held June 2, 1966, the State Committee rejected the annexation to the Hope District and stated that the Steele County Committee should have first considered the petition for attachment to the Page District. At a subsequent hearing in July 1966 the State Committee refused to approve the annexation to the Hope District for the reason that the annexation should have been considered by the county committees of Cass and Steele jointly in accordance with Section 15–27–05, N.D.C.C.

Up to this point the annexation statutes were the only school laws involved in the rival applications to detach and annex certain portions of the Colgate District. However, on August 25, 1966, the county superintendent of schools of Steele County gave notice to the Steele County Committee that the Colgate school district was subject to dissolution and attachment to adjoining districts for failure to operate a school for two consecutive years. This notice was given by virtue of Section 15–22–21, N.D.C.C.:

"Dissolution of school districts—Duty of county superintendent.—The county superintendent of schools shall notify the county committee for the reorganization of school districts:

1. * * *

2. When any school district within the county has not operated a school for the immediately preceding two years providing fifty percent of the pupils from such school district are not attending school in another state, or

3. * * *

Upon receipt of such notice, the county committee shall forthwith give notice of hearing to dissolve the school district * * * in the manner provided in section 15–53–21 and shall after approval by the state board of public school education, provide for its attachment to one or more adjoining school districts effective July first next following approval by the state board of public school education. * * * "

As will be noted in the above section the approval of the State Committee is required to dissolve the school district and after such approval is secured Section 15–22–22, N.D.C.C., provides for the procedure in determining to which school districts the dissolved school district shall be attached:

"Notice of hearing—Order of attachment—Joint county action.—The county superintendent of schools upon order of the county committee for the reorganization of school districts shall notify the clerk of each school district adjoining any district which is to be dissolved pursuant to section 15–22–21 * * * that a hearing will be held and the time and the place of the hearing by the county reorganization committee, for the purpose of determining to which school district or districts the dissolved * * * territory will be attached. Upon or after such hearing the county committee for the reorganization of school districts, shall by resolution order the district dissolved and its territory attached * * * to one or more adjoining school districts in such manner as will, in its judgment, provide the best educational opportunities for pupils of the public schools and the wisest use of public funds for the support of the public school system in such school districts and attached territory. The order shall become effective July first following the date of the order or resolution and after approval by the state board of public school education, as provided in section 15–22–21. If any of such adjoining district is situated wholly or partly in a county other than that which included the district to be dissolved, * * any order attaching territory to such adjoining school district shall become effective only upon the adoption of a concurring resolution by the county com-

mittee for the reorganization of school districts of the other county in which it is situated. * * *"

It will be noted the above section necessitates the approval by the State Committee of any resolution providing for the attachment of the dissolved school district to another. A concurring resolution of the county committee of the adjoining county is required if an adjoining school district is partly or wholly in such county. Hereafter when referring to these last two sections of the Code we will term them as the "dissolution procedure." It will be noted that both the annexation procedure and the dissolution procedure are subject to the limitations of Section 15–53–21, N.D.C.C. This particular section will be discussed later herein.

The two county committees finally met in joint session when the Steele County Committee scheduled three public hearings for October 3, 1966. Notices of these hearings were published as required by statute. The first hearing at 10:00 a. m., set by an agenda arranged by the Steele County Committee, considered the matter of dissolving the Colgate District because no school had operated in said district for two years. A resolution was approved by the Steele County Committee to dissolve the Colgate District. This was without the concurrence of the Cass County Committee whose counsel contended that the annexation petition for attachment to the Page District had been filed first and should have preference. (Minutes of October 3, 1966.) The next hearing at 2:00 p. m. on this same day, as scheduled by the Steele County Committee, was a consideration of the petition for annexation of part of the Colgate District to the Hope District. This proposed annexation was disapproved by both committees. Apparently it was the stand of the Steele County Committee, upon advice of counsel, that dissolution was a mandatory procedure under Section 15–22–21, N.D.C.C., and superior to the annexation procedure by petition of the electors. The final hearing of the day was the consideration of the petition filed for annexation of part of Colgate District to the Page District. This was rejected by the Steele County Committee but approved by the Cass County Committee. After the hearing the Cass County Committee submitted the request for annexation to the Page District to the State Committee for approval under Section 15–27–05.

On October 11, 1967, the State Committee approved the petition submitted by the Cass County Committee for detachment of part of the Colgate District and its annexation to the Page District, to be effective July 1, 1967. An appeal was taken by Steele County Committee but subsequently this appeal was withdrawn to enable the State Committee to reconsider the matter in view of the fact that the hearing held October 11, 1966, had not been in conformity with the Administrative Agencies Practice Act as required by Section 15–27–05. A new hearing was scheduled for April 24, 1967. At this hearing the State Committee agreed upon the insistence of the Steele County Committee to also consider and hear the request for approval of the dissolution of the Colgate District as well as the petition for annexing part of the Colgate District to the Hope District. On April 19, 1968, the State Committee filed its findings of fact, conclusions of law, and its order approving the annexation of a part of Colgate District to the Page District, but denying the petition for annexation of a part of Colgate District to the Hope District as well as the proposed dissolution of the Colgate District. The appeal was then taken to the district court of Cass County. That court remanded the proceedings to the State Committee because of the lack of specific findings as to whether or not in the judgment of the said board the approved attachment of part of the Colgate District to the Page District constituted "an acceptable part of a comprehensive program for the reorganization of the school districts of [each of the counties affected]" as required by Section 15–53–21, N.D.C.C.

Supplemental findings of fact, conclusions of law and order by the State Committee were issued March 3, 1969, after a hearing, in conformity with the order of remand.

Counsel for respondent pointed out in his brief that the State Committee is not an administrative agency for all purposes, and it was not accustomed to following the requirements of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C., which the legislature imposed upon this board in 1963 in the limited situation set forth in Section 15–27–05, N.D.C.C. The district court of Cass County dismissed the appeal May 20, 1969, and the matter now comes before us on appeal from that decision.

Although the record in this case set out above shows that the Steele County Committee had at one time approved annexation petitions for attachment of part of Colgate District to the Hope District and had also attempted to have the dissolution of Colgate approved by the State Committee, on this appeal the main contention of the appellant is that the State Committee erred in failing to use and follow the legislative authority set forth in Chapter 15–53, N.D.C.C., which is entitled "Reorganization of School Districts." This general reorganization procedure was first enacted by Chapter 147 of the 1947 Session Laws. It was an Act derived from a study by the Legislative Council. The Act was repealed and many portions of it reenacted by Chapter 142 of the 1953 Session Laws. There have been several amendments since, but it is basically the same law today. The first two sections of Chapter 15–53, N.D.C.C., are cited by appellant in its brief:

"15–53–01. Title and purpose.—This chapter shall be known and may be cited as an "Act to provide for the reorganization of school districts." It shall have for its purpose the formation of new school districts and the alteration of the boundaries of established school districts in order to provide a more nearly equal-ized educational opportunity for pupils of the common schools, a higher degree of uniformity of school tax rate among districts, and a wiser use of public funds expended for the support of common school system."

"15–53–02. Definitions.—In this chapter unless the context or subject matter otherwise clearly requires:

1. "Reorganization of school district" shall mean and include the formation of new school districts, the alteration of the boundaries of established school districts, and the dissolution or disorganization of established school districts, through or by means of:

    a. The uniting of two or more established districts;

    b. The subdivision of one or more districts;

    c. The transfer to an established district of a part of the territory of one or more districts; or the attachment thereto of all or any part of the territory of one or more districts subject to disorganization for any of the reasons now specified by law; or the transfer therefrom of any part of the territory of one or more districts subject to disorganization for any of the reasons now specified by law; or the transfer therefrom of any part of the territory of said established districts;

    d. And any combination of the methods aforementioned.

\* \* \*."

Appellant contends that the above definition of Chapter 15–53, N.D.C.C., requires any change in boundaries of a school district to be made under the procedure set forth in that chapter, including the submission of the proposal to the electors for approval as provided by Section 15–53–14 thereof. Ap-

pellant further contends that the State Committee had no jurisdiction or authority to approve the annexation to the Page District after the Steele County Committee had passed a resolution dissolving the Colgate District for the reason that the above definition includes proposals for dissolution of school districts. It is argued that it was mandatory for the State Committee to approve the dissolution of Colgate District and that it arbitrarily refused to approve such dissolution.

We have set forth above the background of Chapter 15–53, the reorganization of school districts Act. A consideration of the history and origin of the annexation procedure and the dissolution procedure are also in order.

The right of electors to petition for detachment of a portion of their school district and for attachment to another (which has been termed the annexation procedure throughout this opinion) has been in effect since early statehood in North Dakota. Chapter 62 of the 1890 Session Laws is entitled "Providing for uniform system of public schools," and in Section 45 thereof it provided that established boundaries of school districts may be changed by the board of county commissioners and county superintendent of schools when presented with a petition signed by one-third of the voters residing in the district whose boundaries would be affected by such change. As can well be expected these laws were amended from time to time because of the vital concern of citizens of this state for their schools. Sections 43, 43½, and 44 of Chapter 266 of the 1911 Session Laws provided for a board of arbitration to determine and effect an equalization of property, funds, and debts of the districts involved when boundaries were changed. Basically, this law is still in effect today. Section 1 of Chapter 213 of the 1917 Session Laws required an election to be called after such petitions were filed. If the majority of the electors approved the change, it became effective upon ratification of the board of county commissioners. Chapter 129 of the

1957 Session Laws took away the necessity of an election but required the petition or application to be signed by two-thirds of the electors.

The right of electors of areas lying adjacent to "special" school districts to initiate proceedings to have their area attached to a special school district was granted such electors in Section 170, Chapter 62 of the 1890 Session Laws.

Chapter 158 of the 1961 Session Laws repealed several chapters of school laws in the North Dakota Century Code and amended and reenacted others. This Act was entitled "Consolidation of School District Laws" and also resulted from a legislative research committee study. The procedure for electors to initiate proceedings to have an area attached to a special school district was made applicable to common school districts as well when the legislature combined the two procedures in Chapter 158. Sections 15–2714 to 15–2718, inclusive, North Dakota Revised Code of 1943, became Sections 15–27–04 to 15–27–07, N.D.C.C., as amended by virtue of Chapter 158 of the 1961 Session Laws. The legislature by this Act left the annexation procedure initiated by petition of electors intact. At the same session of the legislature amendments were made to Chapter 15–53, reorganization of school districts, thus recognizing the separate procedures.

Chapter 147 of the 1963 Session Laws transferred the authority for detaching or annexing territory (upon petition of electors) from the board of county commissioners to the county committee for the reorganization of school districts. Chapter 147 also amended Section 15–53–21, N.D.C.C., to conform to the transfer of authority to the county committee, and required, further, that any proposal for a change of boundaries or for the alteration of the boundaries of established school districts must be approved by the State Committee.

The legislature actually strengthened the annexation procedure by Chapter 147 of the 1963 Session Laws. Section 15–27–05,

N.D.C.C., was amended so that in case a majority of the members of each county committee failed to approve an annexation proposal of electors involving two counties, it could be submitted to the State Committee and an approval by this state board had the same effect as approval by both county committees. The previous law required the approval of both county committees.

Chapter 134 of the 1965 Session Laws of North Dakota amended Section 15–27–07 (which had been previously amended by Chapter 158 of the 1961 Session Laws) so that the annexation or change of boundaries became effective July 1st after the final approval by the State Committee instead of five days after the hearing conducted at the local level.

Chapter 134 of the 1965 Session Laws also amended Section 15–53–21 to require that any proposal for change of boundaries or consolidation of school districts must be submitted to the State Committee for final approval *after* a hearing is held on petitions by a county committee. The previous law, Chapter 147 of the 1963 Session Laws, required approval of the State Committee before any hearing was held on petitions by the county committee.

We shall now examine briefly the statutory background of the dissolution procedure set forth in Sections 15–22–21 and 15–22–22, N.D.C.C. The origin of this procedure was Chapter 137 of the 1949 Session Laws. The taking of large tracts of land in North Dakota by eminent domain resulted in the legislature providing for the dissolution of a school district whose assessed valuation had been drastically reduced because of such taking. In the 1957 and 1959 legislative sessions there were changes made in the law that broadened the grounds for dissolution, but it was the amendment of Section 15–22–21 by Chapter 157 of the 1961 Session Laws that added this additional ground for the commencement of dissolution proceedings:

"When any school district within the county has not operated a school for the immediately preceding two years providing fifty percent of the pupils from such school district are not attending school in another state * * *."

The next amendment of the dissolution procedure was by reason of Chapter 145 of the 1963 Session Laws. It passed the power and authority of dissolution from the county commissioners to the county committee. The last amendment occurred through enactment of Chapter 130 of the 1965 Session Laws. This amendment requires not only an approval of dissolution by the state committee but also of any order of attachment. Such order of attachment becomes effective July first after such approval. This 1965 amendment specifically subjected the dissolution procedure to Section 15–53–21 of Chapter 15–53, N.D.C.C. This is the same section which the legislature has made applicable to the annexation procedure as well.

The annexation procedure and the dissolution procedure are found in separate chapters in our Code. There is no reference whatever in either procedure to the general reorganization of school district law, Chapter 15–53, N.D.C.C., except both of the procedures are subject to the limitations of one particular section in Chapter 15–53, to wit, Section 15–53–21. Amendments to the annexation procedure and to the dissolution procedure in the 1963 and 1965 legislative sessions, respectively, brought them under the limitations of, and subject to, the limitations of that one section. See Chapter 147 of the 1963 Session Laws and Chapter 130 of the 1965 Session Laws. Subjecting the annexation and dissolution procedure to one particular section of Chapter 15–53, N.D.C.C., is a clear recognition by the legislature that the two procedures are separate and distinct, and that the remaining portions of Chapter 15–53 are excluded. It is a general principle of statutory interpretation that mention of one thing implies exclusion of another. Dixon v. Kaufman, 79 N.D. 633, 58 N.W.2d 797 (1953); 50 Am.Jur., Statutes, Section 244; 82 C.J.S. Statutes § 333; Nome State Bank v. Brendmoen, 70 N.D. 391, 295 N.W. 82 (1940). The fact that the legislature made

amendments to all three procedures in the 1965 legislative session is surely recognition of the independency of these procedures. (Chapters 130, 133, and 134 of the 1965 Session Laws.)

■ A careful reading of Chapter 15–53, N.D.C.C., discloses that it is a procedure primarily concerned with reorganization proposals sponsored by county committees as the result of a comprehensive study of the school districts of the county. It appears that proposals thereunder are initiated solely by the county committee and not the electors:

> "15–53–09. Public hearing on proposals for reorganization—Hearing testimony for adjusting.—The county committee shall hold a public hearing on the advisability *of any proposal by such committee* for the reorganization of school districts * * * Such committee shall also hear at such time as may be fixed by it, testimony offered by any person or school district interested *in any proposal of the county committee * * *."* (Emphasis supplied.)

Note the requirement of Section 15–53–14, N.D.C.C., pertaining to the election procedure to be followed after approval by the State Board of the county committee's plan for the "reorganization of school districts":

> " * * * The election notices shall clearly state that the election has been called for the purpose of affording the voters an opportunity to approve or reject a proposal for the *formation of a new* school district * * *." (Emphasis supplied.)

Thus the above section discloses that Chapter 15–53, N.D.C.C., primarily pertains to formation of "new school districts" through reorganization.

Since both the annexation and dissolution procedures are subject to Section 15–53–21, N.D.C.C., as amended in Chapter 134 of the 1965 Session Laws, a closer examination of this section is in order:

> "Voluntary proposals for organization or alteration of school districts.—Proposals for the organization of a new school district, for the consolidation of two or more districts, or for the alteration of the boundaries of established school districts, *by any of the means provided for by law,* must be submitted by the county committee and county superintendent to the state committee for final approval:
>
> 1. After a hearing on petitions is held by the county committee, or
> 2. After action is taken by the county committee in cases where no petition is required, or
> 3. For approval before proposals are submitted to the vote of the electors,
>
> as the law may require in each case. Such proposals shall be approved by the county committee and county superintendent and approved by the state committee if in the judgment of said committees they constitute an acceptable part of a comprehensive program for the reorganization of the school districts of the county." (Emphasis supplied.)

The underlined emphasis is important because of a supreme court decision of this state. It is obvious that subsection 1 applies to the annexation procedure. Neither the dissolution procedure or Chapter 15–53 contain any reference to the right of electors to initiate proceedings under either law by way of petition.

In regard to the italicized phrase in Section 15–53–21, above, we call attention to Willow School District No. 5 v. Bottineau County, 92 N.W.2d 734, decided by this Court in 1958. It was contended by the appellant in that lawsuit that the general reorganization of school districts law repealed by implication the annexation procedure. At the time of that controversy Chapter 147 of the 1947 Session Laws was in effect. As previously stated herein, that was the first general reorganization of school district law enacted by the legislature and was the origin of our present Chapter 15–53, N.D.C.C. The title and purpose of the 1947 Act is identical to the present law. At the time, however, the authority which is now in the county committees was then with the county commissioners. In analyz-

ing Chapter 147 of the 1947 Session Laws, it is stated at page 736 of the opinion:

"It contains no repeal clause. While it sets up an organization consisting chiefly of a state committee and county committees designed to accomplish the purposes expressed in the title it does not purport to destroy the power of a board of county commissioners to attach contiguous territory to a special school district pursuant to the provisions of Chapter 15–27 NDRC 1943. Section 24 of the 1947 act recognizes this power of the county commissioners by providing the proposals for the alteration of boundaries of established school districts:

'through or by any of the means provided for by any law in effect at the time, must be submitted by the board of county commissioners, or the county superintendent, as the case may be, to the county committee and to the state committee for approval before any hearings on petitions are held by the board of county commissioners or the county superintendent,'.

"It is clear to us that this statute did not abolish the power vested in the board of county commissioners under the provisions of Chapter 15–27, NDRC 1943, but it did add the requirement that the petition must receive the approval of the county committee and the state committee before a hearing was held thereon by the board of county commissioners." (Emphasis supplied.)

The quoted portion of Section 24 of the 1947 Act set forth in the above opinion is still in effect as part of Section 15–53–21, Chapter 15–53, N.D.C.C., except that this latter section now requires the approval of the State Committee *after* a hearing is held by the county committee. What was said in the above opinion is just as applicable to our present annexation statutes and Chapter 15–53, N.D.C.C., as it was to the laws in effect at the time of that decision.

In Public School District No. 35 v. Cass County Board of County Commissioners, 123 N.W.2d 37 (N.D.1963), we held that there was no conflict or inconsistency between the dissolution procedure and the annexation procedure.

In our opinion the statutes themselves, as well as the history of the legislation, clearly indicate that the annexation procedure set forth in Sections 15–27–04 et seq., N.D.C.C., the dissolution procedure of Sections 15–22–21 and 15–22–22, N.D.C.C., and the reorganization of school districts procedure of Chapter 15–53, N.D.C.C., are each separate, distinct and independent proceedings. The legislature through its many amendments of school laws from time to time has not seen fit to shackle any of these procedures with the requirements of the other, except to subject the annexation and dissolution procedures to Section 15–53–21.

It is undisputed that the petition for annexation to the Page District was filed first. The petition for annexation to the Hope District was filed next. The dissolution proceedings were not commenced until three months later.

In State ex rel. Johnson v. Clark, 21 N.D. 517, 131 N.W. 715 (1911), the City of Minot commenced proceedings to annex 200 acres of land adjoining the City of Minot. Three weeks later a petition was presented to the county commissioners to initiate proceedings for the incorporation of the 200 acres into a village to be known as North Minot. In that controversy as to which proceeding took precedence, the supreme court of this state noted that the jurisdiction of the city of Minot had been invoked on March 18th, 1909, and that jurisdiction of the county commissioners began April 7, 1909, when the incorporation petition had been filed. We stated in that opinion, at page 717:

"In view of the fact that the city council obtained jurisdiction March 18, 1909, could they be ousted of that jurisdiction by the operation of any other board or tribunal, and does the fact that the final order of the board of county commissioners was made prior to that of the city council in any manner affect the proceed-

ings of such city council? It would be an anomalous situation indeed, if co-ordinate bodies exercising governmental powers could operate upon the same subject-matter at one and the same time, and thus enter upon a race to accomplish an object similar to that permitted by the legislation in this instance. * * * Every possible reason suggests the propriety of permitting that body which first secures jurisdiction to proceed in determining the questions involved."

In State ex rel. Harberts v. Klemme Community School District, 247 Iowa 48, 72 N.W.2d 512 (1955), a petition was filed October 3, 1953, seeking the formation of the Belmond Community School District. On October 30, 1953, there was filed a petition seeking the formation of the Klemme Community School District. The latter petition included within its proposed boundaries some of the territory included in the prior petition. The Supreme Court of Iowa stated in its opinion at page 514:

"We think there is a serious jurisdictional defect in the Klemme proceedings. It is elementary that the same land cannot be within the jurisdiction of two pending reorganization proceedings at the same time. Bohrofen v. Dallas Center Ind. Sch. Dist., 242 Iowa 1070, 49 N.W.2d 514; Independent School Dist. of Switzer v. Gwinn, 178 Iowa 145, 159 N.W. 687. Jurisdiction was obtained first over the territory in the Goodell District of Hancock County by the Belmond Board. It was therefore improper for the Hancock County Board to attempt to fix boundaries so as to include that land. Though no statutory provision will be found in chapter 275 or elsewhere relating to such prohibition, it is too well settled for a citation of authority that without jurisdiction the succeeding actions of the board are invalid. * * *

"This principle is not new in law, for it is well settled that prior jurisdiction once obtained in any legal proceeding prevents any subsequent effort to interfere with the orderly disposition under the first proceeding."

In Common School District No. 1317 v. Board of County Commissioners, 267 Minn. 372, 127 N.W.2d 528 (1964), the Minnesota Supreme Court stated in the opinion at page 531:

"The general rule governing competing proceedings for disposition of land, whether between municipalities or school districts, is that the proceeding which is started first has priority; and the bodies carrying on that proceeding retain jurisdiction until that proceeding is complete, one way or another. In the meantime, a later proceeding is of no effect, even if completed first. In re Incorporation of Village of St. Francis, 208 Wis. 431, 243 N.W. 315; School Dist. of City of Birmingham v. School Dist. No. 2, etc., 318 Mich. 363, 28 N.W.2d 265; People ex rel. Hathorne v. Morrow, 181 Ill. 315, 54 N.E. 839; State ex inf. Goodman ex rel. Crewdson v. Smith, 331 Mo. 211, 53 S.W. 2d 271; State ex rel. Binz v. City of San Antonio (Tex.Civ.App.), 147 S.W.2d 551; 2 McQuillin, Municipal Corporations (3 ed.) § 7.28."

█ In State ex rel. Helling v. Independent Consolidated School District No. 160, Brown County, 253 Minn. 271, 92 N.W. 2d 70 (1958), the Supreme Court of Minnesota stated at page 80 of the opinion:

"* * * In order to avoid utter chaos, some rule of priority must exist. In adopting the rule we have applied in municipal affairs, one proceeding may be permitted to proceed to completion before another can be commenced."

We hold in this case that this is a situation where the above rule should apply. Jurisdiction was first obtained by the filing of annexation petitions for detachment from the Colgate District and attachment to the Page District of a certain area of land. The body carrying on that proceeding retains jurisdiction until proceeding is complete. The petition for attachment to the

Hope District, the procedural steps taken for dissolution of the Colgate District, and the attempt to require the proceedings to come under Chapter 15–53 all must bow to the jurisdiction that was first obtained.

■ This does not mean that the county committee of a county cannot at any time conduct comprehensive studies of a county school system in accordance with the provisions of Chapter 15–53, hold hearings thereon, submit to the State Committee a comprehensive or reorganization plan for its approval and if approved thereafter call an election and submit the plan to the electors. The legislature has conferred discretion upon the state committee in the matter of determining whether a school district should be dissolved, whether an annexation proceeding should be approved, and whether approval should be given to reorganization plans for the reorganization or formation of new school districts. Such delegation of authority and discretion has been upheld in this state. Anderson v. Peterson, 78 N.D. 949, 54 N.W.2d 542 (1952).

In the matter before us the record shows that the Steele County Committee had not submitted a reorganization plan under Chapter 15–53 for approval. At the hearing before the State Committee on April 24, 1967, counsel for the appellant introduced into evidence a reorganization plan on behalf of the Steele County Committee. However, upon questioning it developed that the Steele County Committee was not prepared or ready to submit a comprehensive plan for approval. Counsel for appellant admitted that the comprehensive plan as submitted was not being submitted for approval, but only in opposition to the annexation proposal submitted by the Cass County Committee.

■ Appellant cites the Public School District No. 35 v. Cass County, 123 N.W.2d 37 (N.D.1963), as authority on its behalf on this appeal. We stated at page 41 of that opinion:

"Chapter 158 does not provide for the dissolution of a whole school district. Only a part of the territory of a school district may be detached and annexed to an adjacent school district * * *."

Chapter 158 of the 1961 Session Laws was the "consolidation of school district laws" heretofore mentioned and at that time the annexation procedure was contained therein. Appellant claims that the annexation petitions filed by electors for annexation to the Page District and the annexation petitions filed by electors for annexation to the Hope District resulted in an attempt to annex the entire school district. It is true that the entire territory of the Colgate School District was included in the two petitions, but the fallacy of this argument is that there were approximately ten sections of identical land included in both petitions. Obviously, both petitions could not be granted. The same land cannot be within the jurisdiction of two pending school annexation proceedings at the same time. State ex rel. Harberts v. Klemme Community School District, *supra*.

■ Appellant contends that the decision of the State Board is in violation of the constitutional rights of the appellant by denying them an election. Appellant does not point out any specific section of the Constitution as having been violated. We find no provision in the Constitution violated by the fact that the legislature has required an election under reorganization procedure but has not required an election under the annexation procedure. The legislature is given the power under Article VIII of the North Dakota Constitution to establish a complete and efficient system for the education of the youth of the state. The inhabitants of a school district have no property rights in the boundaries thereof. The formation or alteration of school districts and their boundaries is entirely within the power of the legislature. Anderson v. Peterson, 78 N.D. 949, 54 N.W.2d 542, 551 (1952); 78 C.J.S. Schools and School Districts § 27.

■ The annexation procedure, as stated hereinbefore, is subject to Section 15-53-21, N.D.C.C. This section in brief, states that the annexation proposal shall be approved by the county committee, the county superintendent and the State Board if the proposal constitutes "an acceptable part of a comprehensive program for the reorganization of the school districts of the county." Appellant contends that the State Board failed to follow or consider this restriction or guideline placed upon the annexation procedure by the legislature. The record shows that the State Board did give this careful consideration, but we need not consider this further because appellant failed to argue this point in his brief. Specifications of error unsupported by written argument in brief filed in Supreme Court are deemed abandoned. Rule 8(b), Rules of Practice, North Dakota Supreme Court, 76 N.D. xix; Regent Co-op. Equity Exch. v. Johnston's Fuel Liners, 122 N.W. 2d 151 (N.D.1963); Froemke v. Hauff, 147 N.W.2d 390 (N.D.1966); Remmick v. Mills, 165 N.W.2d 61 (N.D.1968).

Appellant contends that the history of these proceedings show arbitrary and discriminatory action on the part of the State Board. The delay on the part of the State Committee is partly due to the lack of experience in the preparation of its decision to conform with the Administrative Agencies Practice Act.

■ To constitute an unfair, arbitrary or discriminatory hearing before an administrative agency, the defect or practice complained of must be such as might lead to a denial of justice or there must be an absence of one of the elements deemed essential to due process of law. An examination of the record on this appeal shows equal opportunity to present evidence, and that such evidence and applicable statutes to have been carefully considered by the administrative agency.

■ Upon appeal to the Supreme Court from a judgment of the district court, entered on appeal from the decision of an administrative agency, the scope of appeal is limited. The decision of the agency must be affirmed unless the court finds that the decision of the agency is not in accordance with law, or that it is violation of the constitutional rights of the appellant, or that any of the provisions of the Administrative Agencies Practice Act have not been complied with in the proceedings before the agency, or that the rules of procedure of the agency have not afforded the appellant a fair hearing, or that the findings of fact made by the agency are not supported by the evidence or that the conclusions and decision of the agency are not supported by its findings of fact. Section 28-32-18, N.D.C.C.; Application of Northern States Power Company, 171 N.W.2d 751 (N.D.1969); In re Superior Service Company, 94 N.W.2d 84 (N.D.1958).

■ We have reviewed the record made before the State Board and we conclude that the findings of fact and decision of the State Board were supported by substantial evidence. These findings include, in part, that the area in dispute lies approximately equidistant between the Page and Hope schools and that transportation is not an issue; that the taxable valuations of the two school districts were approximately equal; that the quality of the schools were alike; that the valuation of the remainder of the Colgate District meets the minimum requirement of the law; that should the remaining territory of the Colgate District subsequently be attached to the Hope District, the Hope District will receive approximately one-half of the area and valuation of the present Colgate District; that boundary line resulting from the disputed area being annexed to the Page District will constitute a logical boundary with a uniform pattern beween the Hope District and the Page District.

It is not disputed that more than two-thirds of the electors of the nine sections of land included in both of the annexation petitions desired that their area be attached

to the Page District, and that most of the school children residing therein have been attending school in the Page District.

We conclude that the decision of the State Board of Public Education is supported by substantial evidence, and that the provisions of the Administrative Agencies Practice Act have been complied with in the proceedings before the State Board.

The decision of the trial court is affirmed.

STRUTZ, C. J., and TEIGEN, ERICKSTAD, and PAULSON, JJ., concur.

The Honorable HARVEY B. KNUDSON deeming himself disqualified did not participate; the Honorable ROY A. ILVEDSON, Judge of the Fifth Judicial District sitting in his stead.